Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
Bruce Chapman (SBN 164258)
bruce@orbitip.com
**ORBIT IP, LLP**
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff,
DBEST PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DBEST PRODUCTS, INC., a California corporation,<br><br>        Plaintiff / Counterdefendant,<br><br>  vs.<br><br>DONGGUAN XIANGHUO TRADING CO., LTD, a Chinese Company,<br><br>        Defendant / Counterclaimant. | **Case No. 2:25-cv-04573-MWC-JC**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>**Fed. R. Civ. P. 65**<br><br>**L.R. 7-19** |

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 2

III. LEGAL STANDARD ................................................................................ 4

IV.  ARGUMENT ............................................................................................. 7

    A.  Xianghuo's Second Ex Parte Application Should be Denied for
        Failure to Comply With Local Rule 7-19, Federal Rule of Civil
        Procedure 65(b), and the Court's Standing Order ......................... 7

    B.  Xianghuo has not Shown Irreparable Prejudice Justifying *Ex Parte*
        Relief ............................................................................................. 9

    C.  Xianghuo has not Shown That it is Without Fault in Creating the
        Alleged Crisis Underlying its Request for *Ex Parte* Relief ....................... 10

    D.  Xianghuo's Attempt to Incorporate by Reference its Invalidity and
        Non-Infringement Arguments from its First TRO Application Are
        Improper and Should be Rejected .............................................. 12

    E.  Even if Considered, Xianghuo is Unlikely to Succeed on the Merits
        Because Issued patents Are Presumed Validity and its Invalidity
        Argument Rests on a Misunderstanding of the Duty of Candor ................ 13

    F.  Xianghuo Has Failed to Establish a Likelihood of Success on the
        Merits Because its Non-Infringement Arguments Lack Merit ................. 14

        1.   Xianghuo's Accused Products Are Carts ........................... 15

        2.   Xianghuo's Accused Products Include a Fastener Configured to
            "Selectively Secure" .......................................................... 18

    G.  Xianghuo Has Not Shown Irreparable Harm—Its Alleged Harm is
        Highly Speculative ..................................................................... 22

    H.  The Balance of Hardships Favors dbest, Which has a Lawful Right to
        Enforce its Patents Through Judicial and Extra-judicial Means ............... 23

    I.   The Public Interest Favors the Enforcement of Patent Rights—Not
        the Continued Availability of Xianghuo's Accused Products on
        Amazon ..................................................................................... 24

V.  CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*19th Capital Group, LLC v. 3 GGG's Truck Lines, Inc*., Case No. CV 18-2493 PA (RAOx), 2018 WL 5796349 (C.D. Cal. May 7, 2018)..................................8, 9

*Abbott Labs v. Andrx Pharms., Inc.*, 452 F.3d 1331 (Fed. Cir. 2006)......................24

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).................5

*American Passage Media Corp. v. Cass Commc'ns*, Inc., 750 F.2d 1470 (9th Cir. 1985)..........................................................................................................5

*American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009)..........................................................................................................5

*Bernhardt v. L.A. County*, 339 F.3d 920 (9th Cir. 2003)...........................................5

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988)............5, 22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012).................24

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270 (Fed. Cir. 2012)..........................................................................................18

Doc's Dream, LLC v. Dolores Press, Inc., 2018 WL 11311292 (C.D. Cal. Mar. 1, 2018), aff'd, 766 F. App'x 467 (9th Cir. 2019).........................................13

*Financial Industry Regulatory Authority, Inc. v. Training Consultants, LLC*, 2012 WL 13020027 (C.D. Cal. Aug. 28, 2012).....................................................8

*Foley v. Graham*, 2022 WL 1714293 (9th Cir. May 27, 2022)................................12

*Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc*,. 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) ........................................................6

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ...............................................5

*GP Indus. v. Eran Indus.*, 500 F.3d 1369 (Fed. Cir. 2007) ......................................23

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974) ..........................................................................................................7

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ............................................. 6, 23

*Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039 (9th Cir. 2015) ................................. 22

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990) ............. 22

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003) .................... 13

*Intervet America, Inc. v. Kee-Vet Labs*, Inc., 887 F.2d 1050 (Fed. Cir. 1989) ......... 13

*Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed.Cir.2004) ............. 19

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873
 (9th Cir. 2009)................................................................................................. 5

*McCracken v. Thor Motor Coach Inc.*, 2015 WL 13566918, at *2 (D. Ariz.
 Dec. 3, 2015) ................................................................................................. 13

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017) ........... 16

*Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364 (Fed. Cir. 2005).............. 18

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998)......... 23

*Mission Power Eng'g. Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D.
 Cal. 1995) ................................................................................................. 4, 6

*North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir.
 1993)............................................................................................................. 13

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)........................ 16

*Reebok Int'l. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994) ....................... 22

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006).................... 6

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)..................... 5

*Sampson v. Murray*, 415 U.S. 61 (1974) .............................................................. 22

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368 (Fed. Cir. 2008) ...................... 24

*Singh v. Giles*, Case No. ED CV 19-01487-VBF-AGR, 2019 WL 4736239
 (C.D. Cal. Sept. 27, 2019)............................................................................ 8, 9

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283 (Fed. Cir. 2015) ......... 15

*Swanson v. U.S. Forest Serv*., 87 F.3d 339 (9th Cir. 1996)..................................... 12

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed.Cir.2008) ...... 15

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009) .......... 13

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) .................................................................. 4

### STATUTES

35 U.S.C. § 282 ........................................................................................................ 13

### OTHER AUTHORITIES

Manual of Patent Examining Procedure § 609.02 .................................................... 14

### RULES

Fed. R. Civ. P. 65 ..................................................................................................... i, 6

Fed. R. Civ. P. 65(b)(1) ........................................................................................... 6, 9

Local Rule 7-19.1 ................................................................................................. 7, 8, 9

DBEST'S OPP. TO DEFENDANT'S
SECOND EX PARTE APPLICATION
Case No. 2:25-cv-04573-MWC-JC

1    **I.    INTRODUCTION**

2          dbest owns several U.S. patents covering innovative portable carts and storage

3    solutions that have achieved substantial commercial success in the U.S.

4    marketplace—garnering visibility on QVC and through online promotions. In late

5    2024, dbest discovered that Xianghuo and other Amazon sellers were infringing the

6    '576 Patent and, in accordance with Amazon's dispute process, filed good-faith

7    takedown notices under its Brand Portal. As a result, Amazon delisted the infringing

8    listings.

9          Xianghuo and several Amazon sellers—collectively the "iBeauty Parties"—

10   filed a declaratory judgment action in this District, soon followed by a second suit in

11   the Northern District of California, seeking declarations of non-infringement and

12   invalidity of the '446 and '546 Patents. Only after Amazon refused to relist their

13   products did Xianghuo attempt to relist the accused products under new active

14   listings—a step that undercuts its later claims of irreparable harm and lends support

15   to a finding of willful infringement. Having failed to secure relief from Amazon,

16   Xianghuo rushed to file two procedurally flawed *ex parte* TRO applications in this

17   Court—requests the Court already rejected once for failing to satisfy the high bar

18   required for emergency relief.

19         Xianghuo's second *ex parte* TRO application should be denied for the same

20   reasons. Its counsel failed to comply with procedural notice requirements, Xianghuo

21   manufactured the alleged crisis through forum-shopping and delay, and its claims of

22   irreparable harm are merely conjecture. Furthermore, Xianghuo has not established a

23   likelihood of success—its invalidity and non-infringement theories are meritless.

24   Finally, both the balance of hardships and the public interest strongly favor dbest's

25   enforcement of its patents—not Xianghuo's efforts to evade them on Amazon's

26   platform.

27

28

DBEST'S OPP. TO DEFENDANT'S
SECOND EX PARTE APPLICATION
Case No. 2:25-cv-04573-MWC-JC

For these and other reasons set forth below, Xianghuo's application fails on all fronts, and the Court should deny it without further delay.

## II.    FACTUAL BACKGROUND

dbest is a leading innovator and seller of premium portable carts and storage solutions, headquartered in Carson, California. Its products—often featured in QVC, Inc. television segments and online promotions—have achieved significant commercial success in the United States.

Xianghuo is a Chinese company that offers and sells its accused products online through Amazon. This dispute arises from Xianghuo's infringement of three U.S. patents owned by dbest through its manufacture, use, sale, offers for sale, or importation of their accused products. The relevant patents are U.S. Patent No. 12, 103,576B2 ("the '576 Patent"), U.S. Patent No. 12,276,446 ("the '446 Patent") and U.S. Patent No. 12,304,546 ("the '546 Patent).

In late 2024, dbest discovered that Xianghuo and other Amazon sellers were infringing the '576 Patent and submitted good faith infringement complaints through Amazon's Brand Portal system, in accordance with Amazon's intellectual property policy, rather than using Amazon's voluntary APEX arbitration procedure. Following these submissions, Amazon voluntarily delisted the Accused Products from its platform.

In response, Xianghuo and other Amazon sellers iBeauty Limited Company ("iBeauty"); Dongguan Laiyang Trading Co., Ltd. ("Laiyang"); Guangzhou Linyu Trading Co., Ltd., ("Linyu"); Guangzhou Lincan Electronic Technology Co., Ltd. ("Lincan") and Guangzhou Senran Electronic Technology Co., Ltd. ("Senran") (collectively, the "iBeauty Parties") filed a declaratory judgment action against dbest in this District. *See iBeauty Limited Co. et al. v. dbest products, Inc.*, Case No. 2:24-cv-10694-WMC-JC ("the iBeauty action").

On May 21, 2025, dbest filed a patent infringement lawsuit against Xianghuo, asserting the '446 and '546 Patents. Dkt. No. 1. dbest also filed separate actions against numerous Amazon sellers, including the plaintiffs in the iBeauty action. Declaration of Ehab M. Samuel ("Samuel Decl."), ¶¶ 7-8. On June 6, 2025, dbest's counsel emailed a copy of a May 21 complaint to David Silver, who is counsel of record for the iBeauty Parties in the iBeauty action. *Id*., ¶ 9 and Ex. A. Counsel asked Mr. Silver to accept service for his clients. *Id.*. Mr. Silver did not respond until June 13, 2025, when he agreed to waive service for iBeauty in exchange for 120 days to respond, but declined to accept or waive service for the other defendants, stating that his firm has not been authorized to represent them in dbest's new actions. *Id*., ¶ 10 and Ex. B.

dbest's counsel reminded Mr. Silver that the iBeauty parties were already subject to the Court's jurisdiction, having sued dbest in this Court. *Id*., ¶ 11 and Ex. C. Nonetheless, Mr. Silver reiterated that his firm had not been authorized to accept service. *Id.* ¶12 and Ex. D.

On June 24, 2025, shortly after the iBeauty Parties delisted their products, dbest's counsel received an email from Qianwu Yang, writing on their behalf with an "urgent inquiry" about the intellectual property rights asserted in dbest's recent complaint to Amazon. *Id*. ¶ 13 and Ex. E. dbest's counsel asked whether Mr. Yang would accept or waive service on behalf of the iBeauty Parties. *Id*. ¶¶ 14-16 and Ex. E. But Mr. Yang would not commit to accepting service. *Id*., ¶ 17 and Ex. E.

On June 26, 2025, on behalf of the iBeauty Parties, Mr. Yang filed a new complaint against dbest in the Northern District of California, Civil Action No. 5-25-05444 (the "N.D. Cal. iBeauty Action"). *Id*. ¶ 19 and Ex. F. This new action seeks declaratory judgment that the iBeauty Parties' products do not infringe the '446 Patent and the '546 Patent and also asserts claims for tortious interference and unfair competition under California Business and Professions Code Section 17200.

*Id.* It does not allege that dbest had already sued the iBeauty Parties in this district, over a month earlier, for infringement of the '446 and '546 Patents. Instead, it alleges dbest's complaints to Amazon as the basis for standing and subject matter jurisdiction. *Id.*, Ex. F at ¶¶ 3, 16, 21, 23, 25, 27, and 29. It even alleges that "the Court would have subject matter jurisdiction over this action if Defendant initiated suit for patent infringement," implying that dbest had not already done so. Ex. F, ¶ 16.

   If filing the declaratory judgment action in the Northern District was intended to also persuade Amazon to relist the iBeauty parties' listings for the Accused Products, it apparently failed. On July 10, 2025, Xianghuo answered the complaint and asserted counterclaims. Dkt. No. 16. The next day, it filed its first *ex parte* application for a temporary restraining order (TRO), alleging that dbest acted in bad faith by submitting its Amazon complaints. Dkt. 18.

   Xianghuo requested immediate judicial relief, including an order that dbest withdraw its Amazon complaints and show cause why an preliminary injunction should not issue. Dkt. No. 18, 2:11-18. The Court denied the TRO application, concluding that it fell short of the standard for *ex parte* relief. Dkt. No. 19. Notably, Xianghuo failed to address the standard for bringing an ex parte application. *See Mission Power*, 883 F. Supp. at 492 ("[An ex parte application] must show why the moving party should be allowed to go to the head of the line in front of all the other litigants and receive special treatment."). Moreover, Xianghuo did not make the necessary showing of a need for emergency relief to justify an ex parte application as opposed to a regularly noticed motion. Dkt. No. 19 at 2-3.

## III.   LEGAL STANDARD

   A preliminary injunction is an "extraordinary remedy." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, "'A plaintiff seeking a preliminary injunction

must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Alternatively, serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support an injunction, assuming the other two elements of the *Winter* test are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v. L.A. County*, 339 F.3d 920, 926 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

Courts may only enter a preliminary injunction upon a clear showing of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. Regarding the second factor, conclusory affidavits are insufficient to demonstrate irreparable harm. *American Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). The moving party must show more than the possibility of irreparable injury; he must demonstrate that irreparable injury is "likely" and "imminent" in the absence of preliminary relief. *Winter*, 555 U.S. at 22; *American Trucking*, 559 F.3d at 1052; *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Injunctive relief can take two forms: prohibitory and mandatory. "A prohibitory injunction prohibits a party from taking action," while "[a] mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal quotation marks omitted). For a mandatory injunction, the movant must establish that the law and facts clearly favor its position, not simply that it is likely to succeed. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Courts do not issue

mandatory injunctions in "doubtful cases." *Id.* Mandatory injunctions are appropriate only when a party faces "extreme or very serious damage that is not "capable of compensation." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

A TRO is an extraordinary and temporary "fix" a court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The purpose of a TRO is to preserve the status quo pending a fuller hearing. Fed. R. Civ. P. 65. The standard for a TRO is the same as the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc,.* 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009).

*Ex parte* applications are solely for extraordinary relief and are rarely granted. *See Mission Power Eng'g. Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995); *see also* Court's Standing Order (Dkt. 12), ¶ 11 ("Ex parte applications are for extraordinary relief, are rarely granted, and should be used with discretion.").

In order to justify ex parte relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed procedures; and (2) that it is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Mission Power*, 883 F. Supp. at 492. Courts have recognized very few circumstances justifying the issuance of ex parte relief. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "'The stringent restrictions imposed ... by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before

reasonable notice and an opportunity to be heard has been granted both sides of a dispute.' " *Id.* (quoting *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974)).

## IV.    ARGUMENT

### A.    Xianghuo's Second Ex Parte Application Should be Denied for Failure to Comply With Local Rule 7-19, Federal Rule of Civil Procedure 65(b), and the Court's Standing Order

Under the Central District's Local Rule 7-19.1, an attorney filing an *ex parte* application has a duty to "(a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." C.D. Cal. L.R. 7-19.1. Xianghuo's counsel failed to comply with these obligations.

Notably, on July 14, 2025, Mr. Yang emailed dbest's counsel, stating that Xianghuo intended to file a second TRO Application "based on newly emerging facts." Dkt. 21-2 at 8; Samuel Decl., Ex. G. That same day, dbest's counsel responded, noting that the second TRO simply repackaged the same allegations and theories that the Court had already rejected in the first application. *Id*. dbest's counsel also pointed out that Mr. Yang's email failed to satisfy the notice requirement of Local Rule 7-19.1, explaining:

> If your client believes there are new factual developments that materially alter the merits of your client's rejected TRO, we request that you specifically identify them. Your email fails to provide the substance of the proposed *ex parte* application, as required under L.R. 7-19.1.

*Id.* In the same correspondence, dbest's counsel expressed concerns about Xianghuo's refusal to consolidate this case with the iBeauty action, where duplicative counterclaims are being litigated through a separate counsel. *Id.* This gamesmanship unnecessarily multiplies proceedings and frustrates judicial efficiency. *Id.*

Nevertheless, on July 15, 2025, at 5:44 a.m. Pacific Standard Time, Mr. Yang emailed a copy of the second TRO Application to dbest's counsel. *Id.*, Ex. H.  Just 25 minutes later—at 6:09 a.m. Pacific Standard Time—Mr. Yang filed the second TRO Application with the Court.

Courts in this District have consistently denied TRO applications for failing to comply with Local Rule 7-19.1. In *Singh v. Giles*, for example, the court rejected a second TRO application where purported notice consisted of a single email sent just minutes before filing. Case No. ED CV 19-01487-VBF-AGR, 2019 WL 4736239, *2-3 (C.D. Cal. Sept. 27, 2019). The court held that such last-minute "gave no meaningful notice to respondents whatsoever," and emphasized that Local Rule 7-19.1 requires oral notice—not notice by email. *Id.* (citing *Financial Industry Regulatory Authority, Inc. v. Training Consultants, LLC*, 2012 WL 13020027, *1 (C.D. Cal. Aug. 28, 2012) (Andrew Guilford, J.) (Denying *ex parte* motion on both procedural and substantive grounds, stating, "The local rules require oral notice .... But here, FINRA only states that they emailed Defendants.")). Such violation of the local rules was alone sufficient to deny the second TRO application, and concluded that waiver of notice is inappropriate because petitioner failed to show that the Court should do so. *Id.*

Similarly, in *19th Capital Group, LLC v. 3 GGG's Truck Lines, Inc.*, the court denied a second TRO application where there was no evidence of an oral notice. Case No. CV 18-2493 PA (RAOx), 2018 WL 5796349, *2 (C.D. Cal. May 7, 2018).

The court held that failure to comply with Local Rule 7-19.1 and the standing order was alone sufficient to deny the application. *Id.*

Here, Xianghuo's conduct mirrors those cases. Its counsel failed to make any *oral* communication to notify dbest's counsel regarding the date or substance of the proposed application, and instead relied solely on an early-morning email just minutes before filing to disclose the substance of the second TRO application. This last-minute email communication did not constitute meaningful notice and fell far short of the procedural safeguards mandated by Local Rule 7-19.1. As in *Singh* and *19th Capital*, that violation alone is grounds for denial.

In addition, this Court's Standing Order explicitly requires "advance notice of the application **by telephone** and email" and warns that *ex parte* applications "that fail to conform to Local Rule 7-19 will not be considered, except on a specific showing of good cause." Dkt. 12 at 9:28–10:3 (emphasis added). Xianghuo's counsel did not provide advance notice by telephone nor made a specific showing of good cause for noncompliance. Nor did he certify in writing why notice should not be required, per Federal Rule of Civil Procedure 65(b)(1)(B).

Moreover, as discussed below, there is no legitimate urgency warranting *ex parte* relief. The second TRO merely reasserts the same claims under the guise of "newly emerging facts." Under these circumstances, the Court should deny Xianghuo's second TRO application for failure to comply with the Local Rules, Federal Rules and this Court's Standing Order.

## B. Xianghuo has not Shown Irreparable Prejudice Justifying *Ex Parte* Relief

As the Court explained in its order denying Xianghuo's first application, a party seeking *ex parte* relief must demonstrate why it "should be allowed to go to the head of the line in front of all the other litigants and receive special treatment." Dkt. 19 at 2 (internal citation omitted).

In its first TRO application, Xianghuo could at least argue that it was the eve of Amazon's Prime Day as a basis for urgency. But that event has now passed. The lost Prime Day sales Xianghuo laments were a known risk it accepted when it chose to participate in the Amazon marketplace under Amazon's intellectual property enforcement policies. Amazon's intellectual property take down policy is no secret, especially from Amazon sellers like Xianghuo. If Xianghuo believes Amazon applied the policy unfairly, its remedy lies with Amazon—not this Court.

Further, the cycle of major retail events is never-ending. With Prime Day behind us, the "back to school" season is next, followed by Black Friday, Cyber Monday, and the winter holidays. There is never a good time for an Amazon seller to be delisted. But that reality does not entitle Xianghuo to jump the line in federal court. It has not demonstrated that its delisting is extraordinary or irreparable as to warrant immediate, ex parte intervention.

Moreover, Amazon—as a private platform—has the right and authority to remove listings on its platform. Amazon exercised its discretion to take down Xianghuo's infringing products to avoid liability. Xianghuo has no protected right to remain on Amazon, and certainly no right to a court order compelling Amazon to sell infringing products.

Therefore, Xianghuo's application should be denied.

## C.    Xianghuo has not Shown That it is Without Fault in Creating the Alleged Crisis Underlying its Request for *Ex Parte* Relief

dbest sued Xianghuo and other Amazon sellers for infringement the '446 and '546 Patents on May 21, 2024. Xianghuo was on notice of these claims no later than early June 2025. Samuel Decl., ¶ 9 & Ex. A. dbest's counsel provided a copy of one of the complaints against the iBeauty Parties to Mr. David Silver, Xianghuo's counsel of record in the iBeauty action, and expressly asked whether to accept service on behalf of Xianghuo and the other iBeauty Parties. *Id.*  That

communication alone should have alerted Xianghuo that dbest had formally accused it of patent infringement—and that dbest might also submit related complaints to Amazon under its intellectual property policy.

On June 24, 2025, Mr. Yang sent his "urgent inquiry" to dbest's counsel asking for information regarding dbest's complaint to Amazon. *Id.*, Ex. E. And according to the Declaration of Lijun Zheng, Xianghuo was aware by June 25 that Amazon had delisted its Accused Products based on dbest's allegations of infringement of the '446 and '546 Patents. Zheng Decl. (Dkt. 21-3), ¶¶ 3 & 9 and Ex. A. Mr. Yang acknowledged the impact in an email that same day, stating that "each minute of erroneous delisting causes substantial and potentially irreparable harm." Samuel Decl., Ex. E. Xianghuo, an Amazon seller since December 2022, would have known then that Amazon's Prime Day was imminent and that delisting during a major sales event could affect its competitive standing.

Yet despite this knowledge, Xianghuo did not *promptly* seek emergency relief in this Court--where it had already sued dbest over the '576 Patent in the *iBeauty* action. Instead, Xianghuo and the other *iBeauty* plaintiffs filed a new lawsuit in the Northern District of California, seeking declaratory judgment of noninfringement and invalidity of the very same '446 and '546 Patents at issue here—relief that mirrors their current counterclaims in this action.

This was not a matter of procedural convenience—it was a calculated attempt to preserve strategic control over a manufactured narrative of invalidity, while evading the more direct and comprehensive exposure of their infringement posed by the '446 and '546 Patents. Xianghuo apparently pursued the Northern District action to also persuade Amazon to reinstate its listings by showing it had sought declaratory relief.  But that gambit failed. Amazon did not reinstate the products, and more than two weeks passed before Xianghuo finally shifted course and filed its

first—procedurally deficient—*ex parte* TRO application in this Court. Only then did the *iBeauty* parties voluntarily dismiss the Northern District action.

These facts show that Xianghuo is not blameless in manufacturing the timing and urgency it now invokes. The "crisis" it cites as grounds for extraordinary *ex parte* relief is one of its own making, borne of strategic delay, deliberate forum-shopping, and repeated evasiveness in accepting service. Neither Mr. Silver nor Mr. Yang, on Xianghuo's behalf, accepted or waived service despite multiple opportunities to do so in June 2025. Having engineered the timing through its own choices, Xianghuo cannot now demand emergency relief from this Court. Accordingly, the Court should deny Xianghuo's second *ex parte* application.

### D.    Xianghuo's Attempt to Incorporate by Reference its Invalidity and Non-Infringement Arguments from its First TRO Application Are Improper and Should be Rejected

Xianghuo's Second TRO application fails entirely to present its own substantive invalidity or non-infringement analysis. Instead, Xianghuo attempts to bypass this deficiency by incorporating by reference arguments from its first TRO application. See Dkt. 21-1 at 8 (citing ECF No. 17 at 8–13 for invalidity, and at 5 for non-infringement).

However, courts consistently reject this tactic. In the Ninth Circuit, arguments or "substantive materials" must be contained *within* the motion itself—not buried elsewhere. *Foley v. Graham*, 2022 WL 1714293, at *1 (9th Cir. May 27, 2022) ("We do not consider arguments incorporated by reference into the briefs."). Likewise, Ninth Circuit precedent holds that Federal Rule of Civil Procedure 10(c) cannot be extended to absorb "substantive material in 'other papers.'" *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)  Indeed, in *Doc's Dream, LLC v. Dolores Press, Inc.*, the court admonished a party for blurring procedural lines by "incorporat[ing] … by reference in extenso" its own arguments from another

motion. 2018 WL 11311292, at *1 (C.D. Cal. Mar. 1, 2018), aff'd, 766 F. App'x 467 (9th Cir. 2019); *see also McCracken v. Thor Motor Coach Inc.*, 2015 WL 13566918, at *2 (D. Ariz. Dec. 3, 2015) ("Courts 'are not like pigs, hunting for truffles buried in briefs,' ... and it would not be fair to require opposing counsel to engage in hunting expeditions either. Incorporating prior arguments by reference in motion papers is generally ignored by the Court.") (quoting *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Xianghuo's tactic does more than flout procedural norms—it prejudices dbest. It forces dbest to hunt through multiple filings under a compressed deadline, undermining the orderly adjudication process and thwarting fair notice of the issues. It cannot rely on arguments it chose not to present here and now. Accordingly, the Court should disregard any attempt to incorporate by reference, and deny any relief predicated on unsupported, undeveloped arguments from a prior brief.

### E.    Even if Considered, Xianghuo is Unlikely to Succeed on the Merits Because Issued patents Are Presumed Validity and its Invalidity Argument Rests on a Misunderstanding of the Duty of Candor

A United States patent is presumed valid. 35 U.S.C. § 282. "The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing." *Intervet America, Inc. v. Kee-Vet Labs*, Inc., 887 F.2d 1050, 1054 (Fed. Cir. 1989). At trial, invalidity must be proven by clear and convincing evidence. *North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993). The presumption of validity applies during preliminary injunction proceedings. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).

Xianghuo fails to meet this burden. The Second TRO Application fails to identify—let alone analyze—any prior art with specificity, instead relying on conclusory assertions that the asserted patents are "highly likely invalid." The

references cited in Defendant's first TRO application are either disclosed on the faces of the asserted patents, disclosed in a parent application pursuant to Manual of Patent Examining Procedure § 609.02, or appear to be cumulative of disclosed references. Notably, CN305015819S, CN214987334, and the Olympia Tools reference (ASIN B000UZ0P7I) are each cited on the face of the '446 and '546 patents, while the B076D9XG7T reference is listed under "Other Publications" and incorporated by reference through the parent application, satisfying the disclosure obligation under MPEP § 609.02. The remaining references appear cumulative of these disclosures. The Application offers no explanation as to how any of these references differ materially or would have impacted patentability. Its allegations of invalidity are based on a flawed understanding of a patent applicant's duty of candor and ignore the established legal framework for inequitable conduct and materiality. Simply put, the argument amounts to mere conjecture unsupported by any factual or legal analysis.

For these reasons, Xianghuo has failed to show a likelihood of success on the merits and this factor weighs against issuing an TRO or order to show cause.

**F.   Xianghuo Has Failed to Establish a Likelihood of Success on the Merits Because its Non-Infringement Arguments Lack Merit**

dbest attached charts showing how Xianghou's Accused Products infringe the '446 Patent and '546 Patent, respectively, to the Complaint.  In particular, Exhibit D to the Complaint (Dkt. 1-4) shows why the Xianghou Accused Products infringe at least claim 22 of the '446 Patent, and Exhibit E to the Complaint (Dkt. 1-5) shows why the Xianghou Accused Products infringe at least claim 9 of the '546 Patent.

Xianghou does not attack the accuracy of the infringement charts contained in Exhibits D and E to the Complaint except to the extent that Xianghou challenges the assertion that Xianghou's Accused Products are not "carts" and do not include a fastener "configured to selectively secure" two panels.  *See* Xianghou's first TRO

application (Dkt 17-1) at 4:3-5. But to arrive at its stated conclusions, Xianghou is required to engage in sophistry in describing its Accused Products and employ overly narrow claim constructions that are inconsistent with the proper construction of those terms in light of the teachings in the specification and the plain and ordinary meaning of those terms.

As demonstrated below, to the extent that the preambles of claim 22 of the '446 Patent and claim 9 of the '546 Patent limit the scope of those claims, Xianghou's Accused Products are "carts" as set forth in the preamble of the claims. Moreover, the Xianghou Accused Products are "carts" as that term must be construed in light of the teachings in the specification and claims.  Moreover, Xianghou's Accused Products include a fastener that selectively secure two panels as required by claim 22 of the '446 Patent and claim 9 of the '546 Patent, respectively.

### 1.    Xianghuo's Accused Products Are Carts

Although the term "carts" appears in the preamble of claim 22 of the '446 Patent and claim 9 of the '546 Patent—and is therefore presumptively non-limiting[1]—it is nevertheless satisfied by Xianghou's Accused Products to the extent the Court determines it should be given limiting effect. As the Federal Circuit has made clear, the "specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess," and in such cases, "the inventor's lexicography governs." *Phillips v. AWH Corp.,* 415 F.3d

---

[1] The Federal Circuit has consistently held that a preamble in a claim is generally non-limiting. *See Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015); *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed.Cir.2008). Here, the term "carts" appears solely in the preamble, and therefore, is not a claim limitation. Xianghuo has offered no basis—legal or factual—for treating this term as a limitation. Accordingly, "carts" should not be construed as limiting the scope of the asserted claims.

1303, 1316 (Fed. Cir. 2005) (*en banc*); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1294 (Fed. Cir. 2017) ("A patentee is free to be his own lexicographer.").

Here, the intrinsic record demonstrates that the patentee expressly defined "cart" to encompass structures that may or may not have wheels. For example, the Field of the Invention states: "[t]his document relates to collapsible carts, and more particularly, to wheeled collapsible carts for high load capacity that [are] capable of folding up for convenient storage." Dkt. 1-1, col. 1, ll. 21–23; Dkt. 1-2, col. 1, ll. 29–31 (emphasis added). Similarly, the Summary of the Invention provides that "[i]n some embodiments, the collapsible cart may include a wheel assembly coupled to the bottom wall of the cart." Dkt. 1-2, col. 3, ll. 45–46; see also Dkt. 1-1, col. 2, ll. 44–45 ("In yet another embodiment, the collapsible carts may include a plurality of wheel assemblies...") (emphasis added).

These disclosures confirm that the patentee intentionally used "cart" to describe a structure not limited to the presence of wheels. The inclusion of wheels is described as optional—merely a feature of some embodiments—not as a defining characteristic of the claimed invention. Thus, under the patentee's express lexicography, "cart" includes both wheeled and non-wheeled configurations, rendering the presence or absence of wheels immaterial to infringement.

Further, even if "cart" were construed to require wheels, Xianghuo's Accused Products still meet that limitation. As shown in Exhibits D (Dkt. 1-4) and E (Dkt. 1-5) to the Complaint, the Accused Products are stackable containers that include or can be readily equipped with wheels, allowing them to be rolled and maneuvered. Indeed, defendant concedes this point, stating that certain accused products are "configured to install rolling components". Dkt. 17-1 at 1-2.

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    In its first TRO application, Xianghuo attempts to obscure this fact on its other products by selectively displaying only one container without wheels installed, omitting the version shown in its own marketing materials that includes attachable wheels. *See* Dkt. 17-1 at 5. Xianghuo further suggests—without legal or evidentiary support—that "cart" must mean "a small vehicle used to carry or transport items," but offers no intrinsic or extrinsic evidence to justify such a narrowing construction.

    Xianghuo's strained and unsupported interpretation of the term "cart" underscores the weakness of its non-infringement position. The Accused Products function as carts, as that term would be understood by a person of ordinary skill in the art. Xianghuo's effort to redefine the term to avoid infringement is unavailing. If anything, its arguments reinforces that it is dbest—not Xianghuo—that is likely to succeed on the merits.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Xianghuo's Accused Products Include a Fastener Configured to "Selectively Secure"

Xianghuo's second non-infringement argument is equally without merit. It argues that its Accused Products do not include a fastener configured to "selectively secure" two panels together as required by secure two panels as required by claim 22 of the '446 Patent and claim 9 of the '546 Patent, respectively. Xianghou's first TRO application (Dkt 17-1) at 6-8.

In support, Xianghou cites *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.,* 672 F.3d 1270, 1275 (Fed. Cir. 2012), and *Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) for the proposition that "the Federal Circuit disfavors constructions that render express limitations superfluous." Xianghou's first TRO application (Dkt 17-1) at 7:14-16.  But nowhere does Xianghou explain how any claim construction dbest has taken—whether explicit or implicit—in its infringement charts attached to the Complaint has rendered any express limitation of the asserted claims superfluous. Instead, Xianghou offers its own narrow interpretation of "selectively", asserting:

> Here, the term "selectively" requires that the fastener provide the user with the ability to choose whether or not to secure the two panels together. **This interpretation is consistent with not only the drawings of the asserted clams of the Patents-in-Suit but also with Dbest's own commercial embodiments of the asserted patents**, as well as with numerous prior art products that were publicly available for sale on Amazon as early as 2001—nearly 19 years before the asserted patents' priority date of January 6, 2020.

*Id.* at 7:19 – 8:5 (emphasis added). In other words, Xianghou improperly construes the claim to be limited to the preferred embodiment disclosed in the specification, as well as dbest's commercial embodiment of its invention.  But that approach to claim

construction is legally flawed. *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed.Cir.2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

Not only does Xianghou construe "selectively" narrowly, but Xianghou compounds this error by asserting that the claims exclude fasteners that automatically fasten the required panels together:

> In contrast, Xianghuo's products incorporate a magnetic component that automatically holds the front wall cover against the frame when the two parts are brought into contact. This automatic engagement affords the user no control or choice—there is no opportunity for "selection." The fastening occurs by default whenever the components align, irrespective of the user's intent.

Dkt. 17-1 at 8:6-10.

But nowhere does the specification or file history of the '446 or '546 Patents (namely their intrinsic record) is any particular type of fasteners excluded, whether they be automatic or self-latching. Indeed, a quick search of Amazon for "magnetic fasteners" reveals a host of various magnetic fasteners known to those skilled in the art. *See* Samuel Decl., Exhibit J.  Such fasteners are similar to the magnetic fasteners to which Xianghou admits it uses (and which are shown in Exhibits D and E to Plaintiff's complaint (Dkts. 1-4 and 1-5).

Further, as shown for example at pages 6-7 of Exhibit D to Plaintiff's Complaint (Dkt. 1-4), Plaintiff explains in great detail how Xianghou's Accused Products have "a first fastener configured to selectively secure the first panel and the second panel in the open condition [i.e., when the cart is in the open condition rather than the collapsed state], the first fastener operable between a first state for securing

the first panel and the second panel along a first plane in the open condition, and a second state for releasing the first panel and the second panel from the first plane" as required by claim 22 of the '446 Patent. This is also shown in the screenshots of Exhibit D below:

| a first fastener configured to selectively secure the first panel and the second panel in the open condition, the first fastener operable between a first state for securing the first panel and the second panel along a first plane in the open condition, and a second state for releasing the first panel and the second panel from the first plane; and | As shown below, the Accused Instrumentalities has a first fastener (i.e., magnet assembly of the "magnetic door") that selectively secures the first panel and the second panel. Notably, the magnet assembly on the "magnetic door" selectively secures the door (i.e. second panel) to the peripheral panel (i.e. first panel). Further, as shown below, the fastener (i.e., magnet) is operable between two states—a first state where the first panel and second panel are along a first plane (i.e., when the second panel is shut or closed) and a second state for releasing the first panel and the second panel from the first plane (i.e., when the second panel is opened). |
|---|---|





Further, as demonstrated at pages 6-10 of Exhibit E to Plaintiff's Complaint (Dkt. 1-5), Plaintiff explains in great detail how Xianghou's Accused Products have

"a fastener configured to selectively secure the first panel and the second panel in a substantially coplanar alignment, the fastener comprising: a first fastener member integrally disposed on an edge of the first panel when the collapsible cart is in the closed condition and the open condition; and a second fastener member integrally disposed on an edge of the second panel when the collapsible cart is in the closed condition and the open condition" as required by claim 9 of the '546 Patent.

Thus, as shown in Exhibits D and E to the Complaint (Dkt. 1-4 and 1-5), Xianghuo's Accused Products visibly include magnetic fastening elements between adjacent panels, and the presence and operation of these elements meet the claim language. This is because the term "selectively securing" has its plain an ordinary meaning in the context of the asserted claims, namely a fastener that can be selectively fastened or unfastened by a user to accomplish the claimed configuration.

Here, Xianghuo itself acknowledges that the magnetic component "holds the front wall cover against the frame when the two parts are brought into contact." Dkt. 17-1 at 8:6-10. This admission confirms that the fastener performs the claimed function of securing panels together in a manner triggered by the product's intended use. The fact that the magnetic fasteners "automatically hold" upon contact does not allow Xianghao to escape liability. Rather, user interaction—bringing the panels together or pulling them apart—dictates whether the panels are secured or released.

The above analysis is also consistent with the definition of "selective"

1: of, relating to, or characterized by selection: selecting or tending to select

2: highly specific in activity or effect.

*See* https://www.merriam-webster.com/dictionary/selective.

Thus, the magnetic fasteners enable the panels to be joined or separated at the user's discretion, consistent with the claim language requiring a fastener "configured to selectively secure." Xianghuo's argument to the contrary is unavailing and

contradicts both the intrinsic record and the ordinary understanding of the claim term. In sum, Xianghuo non-infringement arguments are without merit and should be rejected.

### G. Xianghuo Has Not Shown Irreparable Harm—Its Alleged Harm is Highly Speculative

A movant's failure to show imminent, irreparable harm is grounds to deny the motion for a preliminary injunction. *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 682 n.3 (Fed. Cir. 1990); *see also Reebok Int'l. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (in the absence of irreparable harm, a district court need not make a finding on likelihood of success on the merits). Xianghuo has not made that showing.

The gist of the alleged harm to Xianghuo is economic loss—primarily lost sales and diminished Amazon rankings. But "[p]urely economic harms generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (citing *Sampson v. Murray*, 415 U.S. 61, 61-62 (1974)). Xianghuo's declaration further speculates that  if its products remain delisted, its rankings will never recover and the company may be forced out of business. That kind of hypothetical, contingent harm falls far short of the threshold. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Xianghuo's claim of irreparable harm is undermined by its own conduct. Despite its professed injury, Xianghuo attempted to sidestep Amazon's delisting by relisting the same accused product under a new active listing—conduct that not only contradicts its claim of helplessness, but also supports a finding of willful infringement. *See* Samuel Decl., Ex. I. This disingenuous behavior further weighs against granting the extraordinary relief of a TRO or preliminary injunction.

Moreover, Xianghuo seeks a mandatory injunction—compelling dbest to withdraw its Amazon complaint in hopes of reversing Amazon's independent enforcement decision. Courts disfavor such relief, which is granted only where, unlike here, the party faces "extreme or very serious damage" that is not compensable by money damages. *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Because Xianghuo has failed to demonstrate the type of clear, imminent, and irreparable harm required for such extraordinary relief of a TRO or preliminary injunction, its application should be denied.

## H. The Balance of Hardships Favors dbest, Which has a Lawful Right to Enforce its Patents Through Judicial and Extra-judicial Means

As the holder of duly issued patents, dbest has a statutory right to enforce those patents—including by notifying potential infringers and third parties, such as Amazon, of its good-faith belief that certain products infringe. Courts have consistently recognized that patentees may lawfully communicate their rights unless those communications are made in bad faith. *See GP Indus. v. Eran Indus.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (reversing preliminary injunction against patentee for informing customers of potential infringement). "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998).

Here, dbest acted entirely within its rights. It notified Amazon, a potential infringer, of its good-faith belief that Xianghuo and other Amazon sellers were listing products for sale on Amazon that infringed its patents. If the Court were to compel dbest to withdraw that complaint, it would effectively strip dbest of a core enforcement mechanism that the law and the USPTO confer upon patent holders.

Xianghuo, in contrast, knew when it became an Amazon seller that it was subject to Amazon's policies, including its policy to delist products upon receiving a notice of potential infringement. Xianghuo voluntarily assumed this risk to delist products in exchange for access to Amazon's vast marketplace. Having elected to sell on Amazon, Xianghuo cannot now claim hardship simply because Amazon enforced a policy to which it agreed.

In short, dbest risks losing a legally protected right if the relief sought by Xianghuo is granted. Xianghuo, by contrast, seeks to upend that right in order to sidestep the predictable consequences of the very platform rules it agreed to follow. The balance of hardships therefore weighs strongly in favor of dbest and supports denial of the requested relief.

## I.    The Public Interest Favors the Enforcement of Patent Rights—Not the Continued Availability of Xianghuo's Accused Products on Amazon

The public interest strongly supports the enforcement of patent rights. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2008) ("We have long acknowledged the importance of the patent system in encouraging innovation."). As the Federal Circuit has explained, "[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success o[n] the merits, . . . absent any other relevant concerns . . . the public is best served by enforcing patents that are likely valid and infringed." *Abbott Labs v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

As a patent holder, dbest has the exclusive right to exclude others from making, using, selling, or offering to sell its patented inventions. Enforcing that right through appropriate judicial and extra-judicial means promotes the public interest by preserving the incentives that the patent system is designed to provide.

Xianghuo contends that consumers will suffer if they cannot buy its popular and inexpensive products. But that argument misses the mark: Xianghuo has not shown that its Accused Products are unique, essential, or serve any public health or safety function. To the contrary, the declaration of Lijun Zheng confirms that other sellers are offering similar alternatives to meet consumer demand. Zheng Decl. ¶ 4.

The unavailability of a particular infringing product—especially in a crowded consumer marketplace—does not outweigh the public's interest in respecting intellectual property rights. Because Xianghuo has not demonstrated any overriding countervailing interest, this factor, too, weighs in favor of denying its application.

# V.    CONCLUSION

For the foregoing reasons, dbest respectfully requests the Court to deny Xianghuo's second ex parte application. Additionally, dbest respectfully requests the Court to *sua sponte* consolidate this case with the iBeauty action, Case No. 2:24-cv-10694-WMC-JC. Both cases involve overlapping parties and duplicative claims, which are being pursued by separate law firms on behalf of Xianghuo. Consolidation would serve judicial economy, prevent inconsistent rulings, and avoid unnecessary duplication of effort and cost.

DATED: July 16, 2025                    Respectfully submitted,


                                        ORBIT IP LLP.


                                        By:  /s/ Ehab M. Samuel
                                        Ehab M. Samuel (CA SBN 228296)
                                        David A. Randall (CA SBN 156722)
                                        Bruce Chapman (CA SBN 164258)
                                        *Attorneys for dbest products, Inc*