Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
Bruce Chapman (SBN 164258)
bruce@orbitip.com
**ORBIT IP, LLP**
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff,
DBEST PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DBEST PRODUCTS, INC., a California corporation,<br><br>　　　　Plaintiff / Counterdefendant,<br><br>　vs.<br><br>DONGGUAN XIANGHUO TRADING CO., LTD, a Chinese Company,<br><br>　　　　Defendant / Counterclaimant. | **Case No. 2:25-cv-04573-MWC-JC**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR RECONSIDERATION OF ORDER DENYING SECOND EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**L.R. 7-18** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. LEGAL STANDARD ..........................................................................................2

III. ARGUMENT .......................................................................................................3

    A. Xianghuo's Second Ex Parte Application Should be Denied for Failure to Comply With Local Rule 7-19 and the Court's Standing Order ........................ 3

    B. Xianghuo has not Shown Irreparable Prejudice Justifying an *Ex Parte* Application ..............................................................................................................4

    C. Xianghuo has not Shown That it is Without Fault in Creating the Alleged Crisis Underlying its Request for *Ex Parte* Relief .................................. 6

    D. Xianghuo's Characterization of dbest's Counsel's Declaration Testimony as "Material Misrepresentation" Is Unjustified and Irrelevant ............ 8

    E. dbest Had No Obligation To Identify its Asserted Claims Prior to Service Merely to Facilitate Xianghuo's Ex Parte TRO Application ................... 11

    F. Xianghuo's Argument that it Could Not Predict Competitor Behavior Contradicts its Prior Assertions of Irreparable Harm ............................................13

    G. Xianghuo's Belated Reliance on Other District Court Decisions Does Not Justify Reconsideration .................................................................................. 14

    H. Xianghuo's Procedural Conduct Undercuts Its Claimed Urgency and Diligence ............................................................................................................... 15

IV. CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

### CASES

*19th Capital Group, LLC v. 3 GGG's Truck Lines, Inc.*, Case No. CV 18-2493 PA (RAOx), 2018 WL 5796349 (C.D. Cal. May 7, 2018) ....................................... 4

*Camreta v. Greene*, 563 U.S. 692 (2011) ................................................................ 14

*Cixishihualongdianziyouxiangongsi v. Seven Sparta Corp.*, 2025 U.S. Dist.LEXIS 140135 (W.D.Wash. Jul. 22, 2025) ...................................................14

*Dongguan Zhouda Tech. Co. Ltd. v. Dai*, 2025 WL 1726475, *21 (W.D. Wash. June 19, 2025) ..........................................................................................1, 14

*Financial Industry Regulatory Authority, Inc. v. Training Consultants, LLC*, 2012 WL 13020027 (C.D. Cal. Aug. 28, 2012) ......................................................4

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir. 2024) ............................................................................................................. 14

### RULES

Local Rule 7-18 ................................................................................................ passim

Local Rule 7-19.1 .................................................................................................3, 4

## I. INTRODUCTION

For the third time in as many weeks, Defendant Dongguan Xianghuo Trading Co., Ltd. ("Xianghuo") seeks emergency injunctive relief by *ex parte* application, disregarding both this District's local rules and the Court's instructions. The instant request for reconsideration must be denied. It not only fails to satisfy the strict standard under Local Rule 7-18, but also ignores this Court's admonition—now repeated twice (Dkts. 19 and 23)—that any further request for injunctive relief must be made by regularly noticed motion for preliminary injunction. Xianghuo offers no valid basis for reconsideration: no new facts, no change in law, and no clear error. Instead, Defendant rehashes rejected arguments, introduces no explanation for its ongoing procedural gamesmanship, and continues to seek expedited relief while circumventing the rules that bind every other litigant.

The Court previously denied Xianghuo's second ex parte application because Xianghuo was at fault for its delay in seeking relief, having known of the Amazon delisting since June 25, 2025. Yet Xianghuo now files a third application—again ex parte—without offering any justification for its repeated failure to comply with Local Rule 7-19 or the Court's explicit order that such requests proceed by noticed motion. Nor does Xianghuo's filing dispute the substantive patent infringement and validity arguments raised in Plaintiff's opposition to the second TRO. Dkt. 22 at 13-22. Those points—including the strength of Plaintiff's claims under the '446 and '546 patents—stand unrebutted.

Xianghuo's latest motion also distorts the record. It claims Plaintiff's counsel made a material misrepresentation regarding Amazon listings, despite the fact that Mr. Samuel's statements were grounded in personal observation and sworn declaration, and were not material to the Court's prior ruling. Xianghuo further alleges that Plaintiff failed to identify asserted claims—but as shown in exhibits to

Plaintiff's complaint (Dkt. 1), one independent claim per asserted patent was charted pre-suit, providing sufficient notice of infringement and mooting Xianghuo's lamentations. Further, Xianghuo's assertion of diligence rings hollow given its venue manipulation when it filed a declaratory judgment action in the Northern District of California and refused to accept service in this action in the Central District.

For these and other reasons set forth below, this ex parte application is the latest in a series of strategic, unsupported, and procedurally improper filings. It should be denied.

## II. LEGAL STANDARD

*Ex parte* applications are solely for extraordinary relief and are rarely granted. *See Mission Power Eng'g. Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995); Court's Standing Order (Dkt. 12), ¶ 11 ("Ex parte applications are for extraordinary relief, are rarely granted, and should be used with discretion."). In order to justify ex parte relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed procedures; and (2) that it is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Id.*, 883 F. Supp. at 492.

Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*

*Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

L.R. 7-18 sets out three possible grounds for a motion or application for reconsideration of an order. The first is a material difference of law or fact that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the order was entered. The second is the emergence of new material facts or a change of law after the order was entered. The third is a manifest showing of a failure to consider material facts presented to the Court before the order was entered. L.R. 7-18 also prohibits repeating arguments made in the underlying motion. "No motion for reconsideration may in any manner repeat any oral or written arguments made in support of or in opposition to, the original motion."

### III. ARGUMENT

#### A. Xianghuo's Second Ex Parte Application Should be Denied for Failure to Comply With Local Rule 7-19 and the Court's Standing Order

Under Local Rule 7-19.1, an attorney filing an *ex parte* application has a duty to "(a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." C.D. Cal. L.R. 7-19.1. Xianghuo's counsel again failed to comply with these requirements.

Despite full awareness of the rules, Xianghuo merely sent an email to dbest's counsel at 11:12 p.m. on July 22, 2025, stating that they intended to file an ex parte application and demanding a response within an hour. Xianghuo then filed its ex parte application at 5:50 am P.S.T. on July 23, 2025 per ECF email records. No

attempt was made to comply with the requirement to confer in person or by phone, and no explanation was offered for the failure to do so.

Courts in this District routinely deny TRO applications for failing to comply with Local Rule 7-19.1. See *Singh v. Giles*, No. ED CV 19-01487-VBF-AGR, 2019 WL 4736239, *2-3 (C.D. Cal. Sept. 27, 2019) (citing *Financial Industry Regulatory Authority, Inc. v. Training Consultants, LLC*, 2012 WL 13020027, *1 (C.D. Cal. Aug. 28, 2012); *19th Capital Group, LLC v. 3 GGG's Truck Lines, Inc*., No. CV 18-2493 PA (RAOx), 2018 WL 5796349, *2 (C.D. Cal. May 7, 2018).

In addition, this Court's Standing Order explicitly requires "advance notice of the application ***by telephone*** and email." Xianghuo's counsel again failed to provide advance notice by telephone or show good cause for noncompliance. Nor did certify in writing why that notice should not be required, per Federal Rule of Civil Procedure 65(b)(1)(B). These omissions are not mere technical deficiencies—they violate procedural rules designed to prevent abuse of the ex parte process and to ensure fair notice.

There is no emergency justifying this ex parte filing. Xianghuo concedes the basis for its request is simply "the ex parte nature of the original TRO application." That original application was denied, and the Court has twice directed Xianghuo to proceed by regularly noticed motion. Xianghuo has willfully disregarded that instruction. It now improperly seeks preliminary injunctive relief without filing a motion under Rule 65 and Local Rule 6. Xianghuo's continued failure to follow basic procedural requirements provides an independent and sufficient ground to deny this third attempt at emergency relief.

**B.  Xianghuo has not Shown Irreparable Prejudice Justifying an *Ex Parte* Application**

As the Court explained in its order denying Xianghuo's first application, a party seeking *ex parte* relief must demonstrate why it "should be allowed to go to

1  the head of the line in front of all the other litigants and receive special treatment."
2  Dkt. 19 at 2. Xianghuo again fails to make that showing. Its latest purported
3  justification is that Amazon may dispose of its inventory of accused products if
4  those listings are not reinstated within 60 days. But this concern is neither new nor
5  unexpected. If Xianghuo genuinely believed this was a source of irreparable harm, it
6  could and should have raised the issue in its prior applications.

7        More fundamentally, Xianghuo's argument is unavailing because it has the
8  option to request return of the inventory from Amazon rather than allow it to be
9  destroyed. That alone defeats any claim of irreparable harm. Xianghuo is not being
10 forced to abandon its products—it is choosing not to pursue available remedies
11 through Amazon's own procedures. Furthermore, it continues to sell the same
12 accused products under other active ASINs, as it has conceded in its own filings.
13 These listings are materially identical to the delisted ASINs at issue. *See, e.g.,*
14 Declaration of Ehab M. Samuel in Support of Plaintiff's Opposition to Xianghuo's
15 Application for Reconsideration or Order Denying Second Ex Parte Application for
16 Temporary Restraining Order ("Samuel Decl."), ¶¶ 3-8.

17       Moreover, the claimed harm is speculative. Amazon is not a party to this
18 litigation and is under no obligation to relist Xianghuo's products, even if dbest were
19 to withdraw its complaints. The decision to relist or dispose of inventory lies solely
20 with Amazon, a private entity that has discretion to act in accordance with its
21 policies. Courts routinely recognize that harm resulting from a third party's
22 discretionary decision—particularly a sophisticated platform like Amazon—is not
23 sufficient to justify emergency relief.

24       Xianghuo's situation is no different than that of any other Amazon seller
25 whose listings have been removed in response to a patent infringement complaint.
26 Its assertion of prejudice lacks the urgency and uniqueness required to invoke the ex
27 parte process. Having failed to identify any genuinely irreparable harm or explain its
28

own lack of diligence, Xianghuo has not met its burden under the Court's standards for ex parte relief.

### C. Xianghuo has not Shown That it is Without Fault in Creating the Alleged Crisis Underlying its Request for *Ex Parte* Relief

Xianghuo attempts to excuse its delay in seeking relief by arguing that it did not learn until July 1, 2025, that reinstatement of its Amazon listings would require a temporary restraining order. But this is not what its own pleading actually says. In paragraph 19 of its Counterclaim, Xianghuo states only that "on or about July 1, Amazon notified Xianghuo that the removal of its Non-Infringing Products was not carried out under the APEX program." Dkt. 16 at 17, ¶ 19. That is materially different from Amazon telling Xianghuo that it needed to seek a TRO in order for Amazon to reinstate its products.  Further, this is not a new fact. It was plainly known to Xianghuo at the time of its second TRO application and could have been raised then. As such, it does not satisfy any of the grounds for reconsideration under Local Rule 7-18, including: (a) newly discovered facts; (b) the emergence of facts after entry of the order; (c) clear error or failure to consider material facts; or (d) arguments not already raised. This alone dooms Xianghuo's request for reconsideration.

Xianghuo also seeks to shift blame to dbest, claiming that Plaintiff's refusal to identify specific asserted claims delayed its ability to seek relief. That assertion is flatly contradicted by the record. Plaintiff attached detailed claim charts to its complaint mapping one independent claim from each asserted patent to specific accused ASINs. *See* Dkts. 1-4 & 1-5. This is sufficient under Rule 11 and more than adequate to put Xianghuo on notice. Xianghuo has not cited any authority suggesting that Plaintiff was required to identify all potentially asserted claims prior to the formal disclosure schedule adopted by the Court. Indeed, in the related action *iBeauty Limited Co. et al. v. dbest products, Inc.*, Case No. 2:24-cv-10694-MWC-JC

("iBeauty Action")— where the same patents were asserted against Xianghuo— the Court has ordered that infringement contentions and disclosure of asserted claims to be provided by August 1, 2025. Dkt. 53 at 4. Xianghuo's argument therefore amounts to a demand for premature discovery and does not excuse its delay in seeking emergency relief.

Xianghuo further contends that it relied on Plaintiff's past practice of withdrawing Amazon complaints or issuing covenants not to sue. But that history involved distinct cases where Xianghuo or its affiliates were declaratory judgment plaintiffs—not defendants in an enforcement action. Moreover, those events predated the present suit, which includes multiple accused ASINs, infringement charts, and a pending motion to consolidate related cases. Xianghuo's claim that it was waiting on Plaintiff's cooperation is not credible. Indeed, the Joint Rule 26(f) Report from the iBeauty matter shows that Plaintiff proposed early mediation by October 30, 2025, while Xianghuo refused and instead insisted on delaying mediation until November 25, 2026. That posture reflects strategic delay, not a genuine effort to resolve the matter.

Xianghuo further contends that it relied on a purported belief that Plaintiff would voluntarily withdraw its Amazon complaints or issue a covenant not to sue, as allegedly occurred in other, unspecified matters. But Plaintiff's litigation history undermines any claimed expectation of informal resolution. For those that settled, Xianghuo omits a critical distinction: in those prior cases, the plaintiffs were seeking declaratory relief against dbest. Here, by contrast, dbest affirmatively sued Xianghuo for patent infringement. Defendant cannot plausibly claim that it expected a similar outcome in this materially different posture. Moreover, Plaintiff's past history includes success in enforcement of its patent against another Amazon seller where Plaintiff not only pursued the matter through trial, but secured a favorable verdict. *See Guangzhou Yucheng Trading Co., Ltd. v. dbest products, Inc.*, No. 2:21-cv-

04758-JVS-JDE (C.D. Cal.) That case demonstrates that Plaintiff has and will litigate its claims to judgment when warranted. That public record—reflected in the July 3, 2025 Joint Rule 26(f) Report (Dkt 49 at 5:1-8) in the iBeauty Action between the parties—should have dispelled any assumption by Xianghuo that Plaintiff would simply back down.

Further, Defendant's actual conduct belies any claim of expected resolution. In the related iBeauty Action, dbest proposed early mediation to take place by October 30, 2025, but Xianghuo refused and insisted on delaying mediation until November 25, 2026 — more than a year later. See Joint Rule 26(f) Report at 13:21–23. That delay, proposed by Xianghuo and documented in the record, contradicts its assertion that it was acting diligently to resolve the matter or avoid formal litigation.

Thus, Xianghuo's crisis is entirely of its own making. It ignored service, filed a competing DJ action in the Northern District, refused early resolution efforts, and then waited until after business hours on July 22, 2025, to notify Plaintiff of its intent to file this third ex parte application. These choices underscore that the emergency here is neither unforeseen nor unavoidable—and certainly not one that warrants the extraordinary relief sought.

### D. Xianghuo's Characterization of dbest's Counsel's Declaration Testimony as "Material Misrepresentation" Is Unjustified and Irrelevant

Xianghuo accuses dbest's counsel of "misrepresented" for stating that Xianghuo relisted the same accused products under a new ASIN, citing its counsel's declaration and a screenshot of an active Amazon listing. But Xianghuo does not—and cannot—dispute that the listing was live and visible on Amazon at the time dbest's opposition was filed. Nor does it dispute that it was, in fact, marketing and offering accused products for sale, notwithstanding Amazon's delisting of other

ASINs. Instead, Xianghuo now asserts that the listings shown in the exhibit were older listings that could have become temporarily invisible when inventory was exhausted and automatically reappeared once inventory was replenished. Dkt. 24-1 at 7:14-16. Notwithstanding, before filing for reconsideration, Xianghuo's counsel went further—accusing dbest's counsel of perjury for stating in his declaration that the listing depicted "the same accused product that had previously been delisted by Amazon." *See also* Dkt. 24-1 at 5:16-6:2.

These accusations are not only unfounded—they are immaterial. As explained in the accompanying Samuel declaration, the ASIN referenced in Exhibit 1 (B0DRVVDW4V) is for a product that is identical to the product previously delisted by Amazon under ASIN B0CHRP96MS. Samuel Decl. ¶¶ 3–8 & Exs. 1–2:




B0DRVVDW4V

(Samuel Decl., Ex. 1)

B0CHRP96MS

(Samuel Decl., Ex. 2)

Thus, Mr. Samuel's statement that Xianghuo was offering for sale the same accused product that Amazon had previously removed was not only true, but precisely supported by the comparative exhibits and accompanying narrative. The statement is neither misleading nor inaccurate. It reflects a straightforward observation, consistent with the declaration's plain language and the factual record.

dbest's opposition was timely filed on July 16 to meet the Court's 24-hour deadline. Dkt. 22. The Court denied Xianghuo's second ex parte application the very next day. Dkt. 23. Xianghuo's counsel—located in both Beijing and Nevada—had every opportunity to raise this issue in advance. That they waited until after an adverse ruling to accuse opposing counsel of perjury smacks of gamesmanship. Their conduct undermines their claim of surprise and suggests that the accusation was contrived in search of a basis for reconsideration. But under Local Rule 7-18, reconsideration requires more than mere disagreement—it demands new evidence, manifest injustice, or failure to consider material facts. Xianghuo has demonstrated none of these. It merely seeks to manufacture a dispute in hopes of creating a ground for reconsideration that did not previously exist. That is not a valid basis under L.R. 7-18.

Furthermore, dbest's counsel did not misrepresent anything. His declaration states that he personally located the listing on Amazon on July 15, 2025, and that it had not appeared in prior searches. *See* Samuel Decl. ¶ 9. His conclusion that the listing was new was entirely reasonable, especially given Xianghuo's claim that it was unable to market the accused products. Xianghuo suggest that a reasonable investigation would have revealed that the circumstances described are typical "listing behavior" on Amazon. Namely, that listings may become temporarily invisible and then automatically reappear when inventory is available. Dkt. 24-1 at 7:14-16. It does not explain why dbest's counsel should have suspected that an old listing had reappeared rather than Xianghuo relisting an accused product, or how a reasonable investigation could have been done in the wee hours and revealed the disappearing and reappearing listing phenomenon before dbest's opposition to Xianghuo's second procedurally-deficient application was due. At bottom, Xianghuo's narrative has no evidentiary support and rests solely on supposition.

Even if dbest's counsel mistook a reappeared listing of the accused products for a new one—that is not a misrepresentation, much less perjury.

And while Xianghuo relies on purported historical launch dates to suggest that its listing appeared launched in 2024 and 2025, Amazon's review data contain reviews that date back to 2015. Samuel Decl. ¶¶ 9–17. It defies logic that a seller has reviews that predate a products launch by 9 years. And a closer examination of the reviews shows that they were directed to shower curtain rings—not the accused products. *Id.*, ¶¶ 16-17. This discrepancy raises serious questions about Xianghuo's own accuracy—not that of dbest's counsel.

Finally, Xianghuo fails to establish how any of this matters. The Court's order denying the second ex parte application was based squarely on Xianghuo's delay—not on the existence or origin of any particular Amazon listing. The Court did not reach the merits, nor did it reference the exhibit, the declaration's statements, or any of the accusations Xianghuo now levies. A single contested sentence—contained in a supporting declaration and unmentioned in the Court's decision—does not justify reconsideration. Xianghuo's allegations are not only meritless, but a distraction from the central issue: its continued effort to obtain extraordinary relief without following proper procedures or presenting a genuine emergency.

### E. dbest Had No Obligation To Identify its Asserted Claims Prior to Service Merely to Facilitate Xianghuo's Ex Parte TRO Application

Xianghuo now blames dbest for its delay in seeking emergency relief, contending that dbest "refused to clarify" its infringement position. This argument is both misplaced and unsupported by the record. When dbest filed its complaint, it attached detailed claim charts showing how Xianghuo's accused products infringe independent claims of the '446 and '546 patents. *See* Dkt. 1-4; Dkt. 1-5. These publicly filed documents provide more than sufficient notice of dbest's infringement

1  theories and give Xianghuo a clear basis to evaluate its potential exposure.
2  Nonetheless, Xianghuo argues that dbest should have affirmatively disclosed its
3  asserted claims during a period when Xianghuo had not even accepted or waived
4  service.

5        There is no authority supporting such a demand. Xianghuo's position would
6  effectively require plaintiffs to preview their full infringement contentions prior to
7  any formal litigation deadlines—just to assist a defendant's preparation of an ex
8  parte TRO application. That is not the law. Under the parties' proposed scheduling
9  order in the related iBeauty matter, dbest's infringement contentions are not due
10 until August 1, 2025. Xianghuo cannot credibly claim prejudice from dbest's failure
11 to volunteer this information weeks in advance of any applicable deadline.

12       Nor does the record support Xianghuo's assertion that it was unable to prepare
13 its application without knowing every asserted claim. Xianghuo's second TRO
14 application plainly argued noninfringement on the basis that its products were not
15 "carts" and lacked a fastener "configured to selectively secure" two panels. See Dkt.
16 17-1 at 4:3–5. These arguments mirror those made in its declaratory judgment
17 complaint filed in the Northern District of California—further confirming that
18 Xianghuo had formed its defense strategy well before it sought relief from this
19 Court.

20       Xianghuo also contends that it needed time to conduct a complete invalidity
21 analysis of the entire patent family, including file histories for 11 related
22 applications. That assertion is both implausible and contradicted by Xianghuo's own
23 filings. In its second application, Xianghuo admitted that it had already been
24 "working diligently to gather and analyze prior art references that were neither cited
25 nor considered during prosecution," but complained that the process was "made
26 more difficult by dbest's intentional concealment of the grounds underlying its
27 Amazon infringement complaint." Dkt. 21-1 at 9:15–20. That argument—however
28

flawed—was already raised. Xianghuo's attempt to repackage it in support of reconsideration violates Local Rule 7-18, which prohibits repeating arguments made in prior briefing.

In sum, dbest was under no obligation to assist Xianghuo in preparing its second ex parte application, especially before service had been effected. The materials available to Xianghuo were more than adequate to support its defense. Its continued reliance on this argument only reinforces the lack of legitimate grounds for reconsideration.

### F. Xianghuo's Argument that it Could Not Predict Competitor Behavior Contradicts its Prior Assertions of Irreparable Harm

In its July 15 memorandum, Xianghuo confidently forecasted the commercial impact of Amazon delistings. It asserted that "[o]nce products are delisted, they rarely regain their original status," and warned that "[e]ven a short interruption—such as several days of delisting—can result in the loss of the 'Best Seller' ranking to a close competitor." See Dkt. 21-1 at 3:13–20. Xianghuo also emphasized that "the longer the delisting persists, the greater the adverse impact on search weight." Id. at 3:16–17. These were not speculative concerns—they were presented as known risks to justify emergency relief.

Yet in its latest application, Xianghuo reverses course. Now it contends that "the true scope and permanence of the harm could not have been known in advance" because of the "unforeseeable behavior of competitors during a commercially pivotal period." This inconsistency undermines its credibility. Xianghuo cannot have it both ways: it cannot claim that loss of "Best Seller" status was a foreseeable and imminent harm in one motion, only to assert later that the scope and timing of that harm were unpredictable and unknowable.

Moreover, this recycled argument violates Local Rule 7-18, which prohibits repeating arguments made in connection with an earlier motion "in any manner."

Xianghuo has not identified a new fact, legal authority, or a manifest failure by the Court to consider material presented earlier. It merely reformulates the same theory of commercial harm it relied on last week, this time dressed in speculative language about competitor behavior. That is precisely the type of repetition the rule forbids.

This inconsistency further illustrates that Xianghuo's renewed request for extraordinary relief lacks any truly new basis. Its shifting justifications for delay and harm only confirm that reconsideration is unwarranted.

G. **Xianghuo's Belated Reliance on Other District Court Decisions Does Not Justify Reconsideration**

Xianghuo contends that its delay in seeking preliminary relief should be excused because other district courts in the District of Washington have granted TROs to Amazon sellers weeks or even months after their product listings were delisted. See Dkt. 24 at 13:15–14:13. It urges this Court to take into account "the unique nature of Amazon seller business" in evaluating the timeliness and good faith of its second application. Dkt. 24-1 at 13:17.

While decisions from other district courts may offer persuasive reasoning, they are not binding authority on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 n.19 (9th Cir. 2024) (affirming district court's independent analysis and rejecting the notion that it was required to follow a different district court's holding).

Moreover, the decisions cited by Xianghuo are plainly distinguishable on their facts. In both cited cases, the courts granted TROs after finding a likelihood that the plaintiffs would succeed in proving the asserted design patents invalid. *See Dongguan Zhouda Tech. Co. Ltd. v. Dai*, 2025 WL 1726475, *21 (W.D. Wash. June

19, 2025); *Cixishihualongdianziyouxiangongsi v. Seven Sparta Corp.*, 2025 U.S. Dist.LEXIS 140135, *5 (W.D.Wash. Jul. 22, 2025). Xianghou makes no such showing here. It does not even dispute the substantive patent infringement and validity arguments raised in Plaintiff's opposition to the second TRO. Dkt. 22 at 13-22.

Further, the cases Xianghuo relies on involved design patents with limited scope and single claims, whereas the present case concerns utility patents—the '446 and '546 patents—with multiple asserted claims and detailed infringement charts. The strength of Plaintiff's case under those utility patents remains unrebutted. Xianghuo's attempt to draw support from inapposite design patent rulings cannot overcome the deficiencies in its own showing or justify reconsideration.

Moreover, the Court properly exercised its discretion in denying Xianghuo's second ex parte TRO application based on the record before it. In doing so, it did not overlook the business realities of Amazon sellers. Rather, it considered the totality of Xianghuo's conduct—its decisions to pursue dbest for withdrawal, to file a declaratory judgment complaint in the Northern District, and to delay filing for relief in this Court until after Amazon acted on the takedown request. The Court weighed these facts and concluded that Xianghuo's delay undermined the urgency of its request for extraordinary relief.

Thus, Xianghuo's reliance on other court decisions fails to demonstrate a new fact, legal authority, or manifest error of law or fact required under Local Rule 7-18. Repeating a previously rejected argument under the guise of comparison to different factual records in other cases cannot justify reconsideration. The Court's ruling was grounded in this case's specific timeline and procedural history—not in any mechanical comparison to other Amazon-related litigation. This argument, therefore, does not support reconsideration.

### H. Xianghuo's Procedural Conduct Undercuts Its Claimed Urgency and Diligence

Xianghuo contends that it acted diligently after being informed by Amazon on July 1, 2025 that a court order would be required to reinstate its listings. However, that narrative ignores Xianghuo's broader litigation conduct, which reflects strategic delay rather than diligence. After being informed of dbest's enforcement actions, Xianghuo filed a separate declaratory judgment action in the Northern District of California on June 26, 2025 — despite the fact that dbest had already filed suit in the Central District of California. Xianghuo also refused to accept service of process for Xianghuo and its affiliates when offered by Plaintiff's counsel. See Dkt. 22 (Samuel Decl. iso Second TRO Opposition), ¶¶ 9–17. These actions contradict Xianghuo's claim that it was urgently pursuing relief or acting in good faith to resolve the dispute. Xianghuo's delay in filing its TRO application was not the result of unforeseen obstacles or extraordinary circumstances, but rather a product of its own procedural choices. Accordingly, its renewed request for emergency relief is both legally and equitably barred.

## IV. CONCLUSION

For the foregoing reasons, Xianghuo has failed to meet the strict standard for reconsideration under L.R. 7-18, and its ex parte application should be denied.

DATED: July 24, 2025                        Respectfully submitted,

                                            ORBIT IP LLP.

                                            By:  /s/ Ehab M. Samuel
                                            Ehab M. Samuel (CA SBN 228296)
                                            David A. Randall (CA SBN 156722)
                                            Bruce Chapman (CA SBN 164258)

*Attorneys for dbest products, Inc*