QIANWU YANG  (Cal. Bar No. 336610)
yang@shm.law
YI YI (Cal. Bar No. 353482)
yi.yi@shm.law
AOYU YANG (Cal. Bar No. 360674)
yang.aoyu@shm.law
**SHM LAW FIRM**
3000 El Camino Real
Building 4, Suite 200
Palo Alto, CA 94306
Telephone: (650) 613-9737
Telephone: +8613925212009

*Attorneys for Defendant and Counterclaimant*
DONGGUAN XIANGHUO TRADING CO., LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DBEST PRODUCTS, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>DONGGUAN XIANGHUO TRADING CO., LTD., a Chinese company,<br><br>        Defendant. | CASE NO. 2:25−cv−04573−MWC−JC<br><br>**COUNTERCLAIMANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| DONGGUAN XIANGHUO TRADING CO., LTD.<br><br>        Counterclaimant,<br><br>        v.<br><br>DBEST PRODUCTS, INC.,<br><br>        Counterdefendant. | |

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTS          .......................................................................................... 2

III.  LEGAL STANDARD ................................................................................ 7

IV.   ARGUMENTS ........................................................................................ 7

   A. Xianghuo Will Highly Likely Succeed On the Merits ................................. 7

       1. Xianghuo's Accused Products Are Highly Unlikely to Infringe the
       Patents-in-Suit .................................................................................. 7

           a. The Accused Products Are Not "Carts" ......................................... 8

           b. The Accused Products Lack Fastener Configured to "*Selectively
           Secure*" Panels .............................................................. 10

       2. The Patents-in-Suit Are Highly Likely Invalid in Light of Numerous
       Prior Art ............................................................................................ 12

   B. Xianghuo Will Be Irreparably Harmed by the Delisting of Its Accused
   Products Absent the Requested Relief ........................................................ 17

   C. The Balance of Hardships Favors a Preliminary Injunction ...................... 22

       1. Xianghuo Faces Severe and Irreparable Harm Absent Relief .............. 22

       2. Monetary Relief, If Any, Is Enforceable Against Xianghuo in Both the
       United States and China ..................................................................... 23

   D. The Public Interest Favors Issuing a Preliminary Injunction ..................... 23

V.    CONCLUSION ..................................................................................... 25

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

i

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

## Table of Authorities

**Page(s)**

Cases

*Abbott Labs. v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)....................................................................18

*All. for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011).................................................................... 7

*Alnylam Pharms., Inc. v. Pfizer Inc.*
    No. 22-336-CFC (D. Del. Aug. 9, 2024).........................................................9

*Ariz. Dream Act Coal. v. Brewer*
    757 F.3d 1053 (9th Cir. 2014)................................................................... 18

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*
    289 F.3d 801 (Fed. Cir. 2002).................................................................. 9

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012).................................................................. 18

*Design Furnishings, Inc. v. Zen Path, LLC*,
    2010 WL 5418893 (E.D. Cal. Dec. 23, 2010)...............................................25

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*
    672 F.3d 1270 (Fed. Cir. 2012).................................................................11

*Hill v. McDonough*
    547 U.S. 573 (2006)................................................................................ 7

*hiQ Labs, Inc. v. LinkedIn Corp.*
    31 F.4th 1180 (9th Cir. 2022)................................................................. 18

*Marrin v. Griffin*
    599 F.3d 1290 (Fed. Cir. 2010)................................................................ 9

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

ii

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

*MBO Labs., Inc. v. Becton, Dickinson & Co.*
  474 F.3d 1323 (Fed. Cir. 2007)........................................................... 9

*Medcursor Inc. v. Shenzhen KLM Internet Trading Co.*,
  543 F. Supp. 3d 866 (C.D. Cal. 2021)...........................................25

*Merck & Co. v. Teva Pharms. USA, Inc.*
  395 F.3d 1364 (Fed. Cir. 2005).........................................................11

*Seachange Int'l, Inc. v. C-COR Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005).......................................................... 8

*Southwall Techs., Inc. v. Cardinal IG Co.*
  54 F.3d 1570 (Fed. Cir. 1995)............................................................ 8

*Verdegaal Bros. v. Union Oil Co. of California*
  814 F.2d 628 (Fed. Cir. 1987)........................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008)............................................................................... 7

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

## I. INTRODUCTION

Counterclaimant Dongguan Xianghuo Trading Co., Ltd. ("Xianghuo") is a leader in the storage boxes categories. Since entering the U.S. market in December 2022, Xianghuo has become a top-performing brand in Amazon's "Storage Boxes" category due to its high-quality products offered at competitive prices. Xianghuo's storage boxes have earned the "Amazon's Choice" and "No. 1 Best Seller" designations and have accumulated over 5,300 verified customer reviews with average ratings exceeding four stars.

Counterdefendant dbest products, Inc. ("Dbest") is a copycat that has filed patent applications misappropriating prior art long disclosed in the public domain, including in jurisdictions such as China and the United States. Dbest, unlike other typical copycats, has engaged in a pattern of submitting bad faith patent complaints to Amazon—based on patents that are highly likely invalid—with reckless disregard for the factual and legal merits, in order to coerce unfair settlement.

Amazon often removes listings based on complaints either asserting highly likely invalid patents or targeting products that are highly likely non-infringing. This pattern reflects an internal Amazon policy that is vulnerable to abuse by bad-faith complainants like dbest.

With regard to the present case, Dbest submitted bad-faith patent infringement complaints to Amazon again under newly issued collapsible carts

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1  patents U.S. Patent Nos. 12,275,446 ("'446 Patent") and 12,304,546 ("'546 Patent")

2  (collectively, the "Patents-in-Suit"), resulting in the delisting of Xianghuo's storage

3  box products, including but not limited to ASINs B0CHRP96MS, B0CC5YKT2T,

4  B0CFQG78HJ,    B0DRVSRTDV,    B0CGZP8NMX,    B0D6QRMDQ6,

5  B0F2MMFQZL, and B0F6N56J3Z ("Accused Products").

6       In effect, the delisting functions as a de facto permanent injunction against

7  Xianghuo—imposed without any due process as a result of dbest's bad faith

8  complaints to Amazon—and is pushing Xianghuo to the brink of bankruptcy.

9  Xianghuo's goodwill and reputation are damaged, disposal of its inventory valued at

10 approximately $1 million is now imminent in light of Amazon's 60-day inventory

11 removal policy, and most of Xianghuo's business operations have been forced to

12 shut down due to dbest's egregious infringement complaints to Amazon.

13      Xianghuo has been actively seeking redress since the delisting on June 25,

14 2025. Xianghuo now continues to seek judicial relief to prevent irreparable harm. It

15 respectfully requests that the Court grant its motion for preliminary injunction.

16                          **II. FACTS**

17      Since entering the U.S. market in December 2022, Xianghuo has been selling

18 storage bins on Amazon.com under the storefront "XIANGHUO." *See* Decl. of

19 Lijun Zheng, ¶ 8.

20      Xianghuo has become a top-performing brand in Amazon's "Storage Boxes"

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

2

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

category due to its high-quality products offered at competitive prices. Since approximately May 2024, Xianghuo's storage boxes have earned both the "Amazon's Choice" and "No. 1 Best Seller" designations, accumulating over 5,300 verified customer reviews with average ratings exceeding four stars. *See* Decl. of Lijun Zheng, ¶ 12. Notwithstanding this early success, Xianghuo remains a young startup with less than two years of operating history and fewer than ten employees.

This is not the first time dbest has submitted baseless complaints to Amazon against Xianghuo. On or around Thanksgiving 2024, dbest filed infringement complaints with Amazon based on related patents from the same family of the Patents-in-Suit on collapsible carts. Those complaints led to the removal of Xianghuo's listings for the same non-infringing storage box products. Amazon reinstated the affected non-infringing storage box products after Xianghuo, through SHM Law Firm, submitted a comprehensive non-infringement legal opinion. *See* Decl. of Lijun Zheng, ¶ 18.

Dbest's behavior resulted in multiple declaratory judgment lawsuits, where sellers were forced to go to court after dbest filed baseless and bad faith complaints with Amazon that led to unjustified delistings. Notable examples include:

● *Taizhou Luqiao Shengqiang Housewares Factory v. Dbest Products Inc.*, No. 2:24-cv-10842 (C.D. Cal.)

● *Shenzhen Yihong Technology Co. Ltd. v. Dbest Products Inc.*, No. 2:24-

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

3

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1    cv-02043-KKE (W.D. Wash.)

2    ● *ECR4Kids, L.P. v. Dbest Products, Inc.*, No. 2:24-cv-04523-MCS-AJR

3    (C.D. Cal.)

4    In each of the above declaratory judgment actions, dbest subsequently issued

5    a covenant not to sue after the lawsuit was filed. These events demonstrate a

6    behavioural pattern in dbest's egregious enforcement strategy against plainly non-

7    infringing products.

8    On or about June 25, 2025, Xianghuo received notice from Amazon that the

9    Accused Products had been delisted following dbest's patent infringement

10    complaint to Amazon under newly issued U.S. Patent Nos. 12,275,446 (titled: High

11    load capacity collapsible carts) and 12,304,546 (titled: Collapsible carts). The

12    delisting was executed without prior notice. *See* Decl. of Lijun Zheng, ¶ 9.

13    On or about June 27, 2025, Xianghuo, through counsel, submitted non-

14    infringement legal opinion to Amazon for reinstatement of the Accused Products,

15    but to no avail. In the course of communications with Amazon, Xianghuo did not

16    learn until July 1, 2025 that the delisting was not carried out as part of Amazon's

17    generally required Amazon Patent Evaluation Express ("APEX") procedure, and

18    that reinstatement would only be likely upon issuance of a court order. *See* Decl. of

19    Lijun Zheng, ¶ 10.

20    Under Amazon's established practice, listings can be reinstated following a

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

4

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1  comprehensive non-infringement legal opinion submitted by counsel directly to

2  Amazon. However, if Amazon expressly denies the appeal and states that

3  reinstatement will only be granted pursuant to a court order, then reinstatement can

4  generally be secured by obtaining such an order and requesting Amazon's

5  compliance.

6      Amazon is Xianghuo's exclusive sales channel. Xianghuo has no other

7  platform through which to generate revenue, which makes the impact of the

8  delisting immediate and irreparable. Therefore, the delisting functions as a de facto

9  injunction, effectively enjoining Xianghuo from selling in the U.S—its only market.

10  *See* Decl. of Lijun Zheng, ¶ 14. Consequently, if Xianghuo's inventory is removed

11  by Amazon within the next approximately 30 days as scheduled, there will be

12  nowhere for Xianghuo to properly dispose of the returned inventory, which is

13  valued at approximately one million U.S. dollars. *See* Decl. of Lijun Zheng, ¶ 16.

14      On July 11, 2025 at 0:39 a.m. PST, within approximately 9 days after

15  Amazon confirmed that reinstatement will only likely be granted pursuant to a court

16  order, Xianghuo filed the first Application for Temporary Restraining Order and

17  Order to Show Cause Why a Preliminary Injunction Should Not Issue ("first TRO

18  application").

19      "No. 1 Best Seller" and "Amazon's Choice" designations constitute

20  Xianghuo's most valuable intangible asset underpinning its goodwill and reputation.

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

5

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

After July 11, 2025 Amazon Prime Day, Xianghuo's competitors began occupying its former search rankings, jeopardizing its "Best Seller" status permanently, diminishing its visibility to customers, and eroding its market share. The Best Seller Ranking ("BSR") of Xianghuo's competitor IRIS USA's product B0F5TCWXCD is currently No. 1 Best Seller in the storage box category; the Best Seller Ranking ("BSR") of Sterilite's product B0DYF5KNDG is currently No. 3 in the storage box category; the Best Seller Ranking ("BSR") of Sterilite's product B0DY22WH97 is currently No. 4 in the storage box category. *See* Decl. of Lijun Zheng, ¶ 4.

Even if Amazon reinstates the Accused Products after a one-month delisting, it is highly unlikely that Xianghuo's goodwill and reputation on Amazon, including prior search rankings and relationships with customers and suppliers, will be restored. Once products are delisted, even for as brief as one month, they rarely regain their original status. Amazon's reinstatement does not encompass recovery of the underlying ranking factors that determine product visibility—commonly referred to as "search weight." The longer the delisting persists, the greater the adverse impact on search weight. *See* Decl. of Lijun Zheng, ¶ 5.

After Xianghuo's second TRO application was denied, on July 21, 2025, Xianghuo filed a Demand for Arbitration and an Application for Emergency Relief against Amazon with the American Arbitration Association ("AAA"), seeking emergent reinstatement of Xianghuo's delisted products and to prevent the disposal

of its existing inventory within the next approximately 30 days. At the status conference held on July 24, 2025, Amazon's counsel objected to the AAA's jurisdiction over the dispute, asserting that because the underlying claims concern patent infringement and invalidity, jurisdiction lies exclusively with the federal district courts and the United States Patent and Trademark Office ("USPTO").

## III.    LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (the "Winter test"). In the Ninth Circuit, courts also apply a sliding scale test, in which the elements of the Winter test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party bears the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## IV.    ARGUMENTS

**A.    Xianghuo Will Highly Likely Succeed On the Merits**

**1.    Xianghuo's Accused Products Are Highly Unlikely to Infringe the Patents-in-Suit**

1    Xianghuo is likely to succeed on the merits because the accused products are

2   not "carts" and do not include a fastener "configured to selectively secure" two

3   panels.

4    Determining whether an accused product infringes a patent claim involves a

5   two-step process. First, the court must construe the asserted claims. Second, the

6   court must compare the construed claims to the allegedly infringing device.

7   *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005). To prove

8   infringement, a patentee must show that the accused device meets each claim

9   limitation literally or under the doctrine of equivalents. *Id.* To establish infringement,

10  every limitation set forth in a claim must be found in an accused product, exactly.

11  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

12  **a.    The Accused Products Are Not "Carts"**

13   As a threshold matter, the preambles of both asserted claims are limiting

14  because they define the invention's essential structure and purpose. These preambles

15  recite a "collapsible cart configured to transition from a closed condition...to an open

16  condition," which imparts "life, meaning, and vitality" to the claim language. As the

17  court held in *Alnylam Pharms., Inc. v. Pfizer Inc.*, No. 22-336-CFC, at 9–10 (D. Del.

18  Aug. 9, 2024), "[t]he Federal Circuit…has repeatedly held that '[t]he preamble

19  limits the claimed invention if it is necessary to give life, meaning, and vitality to the

20  claim,'" quoting *Marrin v. Griffin*, 599 F.3d 1290, 1296 (Fed. Cir. 2010). *See also*

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1   *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir.

2   2002); *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir.

3   2007).

4   The Accused Products are not "carts" as claimed in the Patents-in-Suit.

5   According to its plain and ordinary meaning, a "cart" refers to a "small wheeled

6   vehicle." *See* Merriam-Webster Dictionary, https://www.merriam-

7   webster.com/dictionary/cart (last visited July 20, 2025). The Accused Products,

8   some of which lack any rolling components at all, cannot be used for transportation

9   and serve solely as storage containers. No reasonable person would consider them to

10  be "small wheeled vehicles."

|  |  |
|---|---|
| dbest Quik Cart (ASIN B0CFDCLJ3G) | Accused Product - Storage box |

19

20  Certain Xianghuo storage boxes, such as ASIN B0CHRP96MS, are however

configure to install rolling components for the limited purpose of facilitating the

1  movement of storage boxes indoors. However, these products do not qualify as

2  "carts," as they lack the structural features and functional characteristics necessary

3  to meet that definition. After all, not everything equipped with wheels should be

4  classified as a cart.

5  **b.  The Accused Products Lack Fastener Configured to "*Selectively Secure*"**

6  **Panels**

7       Xianghuo's products do not include "a fastener configured to selectively

8  secure the first panel and the second panel in the open condition" as required by

9  claim 22 of the '446 patent or "a fastener configured to selectively secure the first

10  panel and the second panel in a substantially coplanar alignment" as required by

11  claim 9 of the '546 patent.




COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

| Picture from dbest Quik Cart (ASIN B0CFDCLJ3G) demonstrating that the user can selectively secure or unsecure the first panel and the second panel | Picture of the Accused Products showing automatic magnetic engagement that does not allow the user to make a "selection." |
| --- | --- |

It is well established that the Federal Circuit disfavors claim constructions that render express limitations superfluous. *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012). Likewise, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).

Here, the term "selectively" requires that the fastener provide the user with the ability to choose whether or not to secure the two panels together. This interpretation is consistent not only with the drawings of the asserted claims of the Patents-in-Suit (see, e.g., Figs. 8,9,17,18 of the '446 Patent and Figs. 42-44 of th '546 Patent), but also with Dbest's own commercial embodiments of the Patents-in-Suit, as well as numerous prior art products that were publicly available for sale on Amazon as early as 2001—nearly 19 years before the Patents-in-Suit's alleged priority date of January 6, 2020.

In contrast, Xianghuo's products incorporate a magnetic component that automatically holds the front wall cover against the frame when the two parts are brought into contact. This automatic engagement affords the user no control or

1  choice—there is no opportunity for selection. The fastening occurs by default

2  whenever the components come into contact, irrespective of the user's selection.

3      Because the accused products lack a fastener that permits the user to

4  selectively secure the panels, as required by the asserted claims, Dbest is unlikely to

5  establish infringement. For further detail, see Exhibits 5-1 and 5-2 (Non-Infringing

6  Claim Charts).

7  **2.    The Patents-in-Suit Are Highly Likely Invalid in Light of Numerous**

8  **Prior Art**

9      Numerous prior art references, including widely available commercial

10  products sold on Amazon, render the Patents-in-Suit invalid as anticipated under 35

11  U.S.C. § 102. Critically, none of these prior art references were substantively

12  considered during the prosecution of the asserted claims of the Patents-in-Suit.

13      A claim is anticipated only if each and every element as set forth in the claim

14  is found, either expressly or inherently described, in a single prior art reference.

15  *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987).

16      Here, numerous prior art references—including the following—individually

17  anticipate each and every element of the asserted claims, whether expressly or

18  inherently described, within a single prior art reference.

19

20



'446 and '546 Patents – Figure 1 and Figure 9

For instance, the Olympia Tools Pack-N-Roll Portable Tool Carrier sold under Amazon ASIN B000UZ0P7I was publicly available as early as October 1, 2001—more than eighteen years before the alleged priority date of the Patents-in-Suit, which is January 6, 2020. See https://www.amazon.com/dp/B000UZ0P7I?th=1 last visit on July 8, 2025. See also https://www.amazon.com/dp/B076D9XG7T, last visit on July 10, 2025.



Olympia Tools Pack-N-Roll Portable Tool Carrier (Model 85-010)(ASIN B000UZ0P7I)

1

2      The Foldable Utility Cart sold under Amazon ASIN B07YFFPK7B was

3  publicly available as early as 2019, also preceding the alleged priority date of the

4  Patents-in-Suit,    which     is     January     6,     2020.     See

5  https://www.amazon.com/dp/B07YFFPK7B, last visit on July 8, 2025.



**FELICON SELORSS Foldable Utility Cart, Black (ASIN B07YFFPK7B)**

14      Chinese Design Patent CN303947734S, published on November 30, 2016,

15  discloses a design and structure anticipates the Patents-in-Suit. See Exhibit 1 and

16  Exhibit 1-1, the corresponding Google-translated version.

17

18

19

20

1
2
3
4
5
6
7
8
9



CN303947734S - Stereoscopic image 1 and Change state diagram 1

10

11      Chinese Design Patent CN304632396S, published on May 18, 2018, discloses

12   a design and structure anticipates Patents-in-Suit. See Exhibit 2 and Exhibit 2-1, the

13   corresponding Google-translated version.

14
15
16
17
18
19



20      CN304632396S - Stereogram and Folded state reference diagram

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

15

SHM LAW FIRM
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1

2    Chinese Design Patent CN305015819S, published on January 29, 2019,

3    discloses a design and structure anticipates the Patents-in-Suit. See Exhibit 3 and

4    Exhibit 3-1, the corresponding Google-translated version.



CN305015819S - Open State Diagram and Folding state diagram

13    Dbest's own product, the "Quik Cart Sport Collapsible Rolling Crate on

14    Wheels for Teachers Tote Basket," was on sale on Amazon no later than January 15,

15    2018. See https://www.amazon.com/dp/B0CFDCLJ3G?th=1

16

17

18

19

20

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

16

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737



dbest Quik Cart  (ASIN B0CFDCLJ3G)

Because this public disclosure occurred more than one year before the alleged priority date of the Patents-in-Suit—January 6, 2020—it qualifies as prior art that renders the Patents-in-Suit unpatentable under the on-sale and public use bars of 35 U.S.C. § 102.

For additional details, including claim-by-claim mapping of the prior art to the asserted claims, see Exhibits 4-1 and 4-2 (Invalidity Claim Charts).

**B.    Xianghuo Will Be Irreparably Harmed by the Delisting of Its Accused Products Absent the Requested Relief**

Absent a preliminary injunction restoring Xianghuo's accused products to Amazon.com, Xianghuo will suffer irreparable harm for which no adequate remedy at law exists. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v.*

*Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "[T]he threat of being driven out of business is sufficient to establish irreparable harm." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). Courts have consistently recognized that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008)).

Here, the delisting of its top-selling products has caused and will continue to cause severe and irreparable harm to Xianghuo.

Firstly, the delisting directly threatens Xianghuo's commercial survival. The Accused Products account for approximately 89% of its monthly revenue and 95% of its profit. Losing these products removes nearly the entirety of Xianghuo's income stream and imperiled the reputation and goodwill that took years to build. *See* Decl. of Lijun Zheng, ¶¶ 12-13.

Secondly, Xianghuo's storage boxes have earned the "Amazon's Choice" and "No. 1 Best Seller" designation and have accumulated over 5,300 verified customer reviews with average ratings exceeding four stars, which significantly increase visibility and conversions. The removal of its listings threatens Xianghuo's ability to regain its algorithmic rankings and customer trust—both of which are essential intangible assets that cannot be recovered through monetary damages alone.

1       If the delisting of its products continues, Xianghuo faces substantial and

2   irreparable harm, including but not limited to destruction of inventory, loss of

3   marketplace position, diminished goodwill, loss of reputation, risk of account

4   termination, etc., all of which are difficult to quantify. Without the requested relief,

5   the cumulative impact may eventually result in the collapse of Xianghuo's business

6   and lead to bankruptcy. *See* Decl. of Lijun Zheng, ¶ 17.

7       Thirdly, Amazon is Xianghuo's exclusive sales channel. Xianghuo has no

8   other platform through which to generate revenue, which makes the impact of the

9   delisting immediate and irreparable. The company cannot effectively shift inventory,

10  marketing, or fulfillment efforts elsewhere without incurring enormous costs and

11  delays. Therefore, as a result of dbest's abusing Amazon's infringement reporting

12  system—without any due process or even prior notice—the delisting functions as a

13  de facto injunction, effectively enjoining Xianghuo from selling in the U.S, its only

14  market. *See* Decl. of Lijun Zheng, ¶ 14.

15      Fourthly, Amazon has issued a violation notice tied to the delisting, which

16  now appears on Xianghuo's "Account Health" dashboard. Per Amazon's policy,

17  such violations remain on record for up to 180 days unless affirmatively resolved. If

18  not cleared, they can result in full account suspension, which would permanently

19  terminate Xianghuo's ability to operate on the platform. A shutdown of Xianghuo's

20  Amazon storefront would terminate its only business operation. *See* Decl. of Lijun

1  Zheng, ¶ 15.

2    Fifthly, Xianghuo's business model depends on rapid inventory turnover. The

3  delisting has rendered significant inventory unsellable, locking up working capital

4  and creating warehouse backlogs. Xianghuo's current inventory related to the

5  delisted ASINs stored in Amazon fulfillment centers has an estimated sales value of

6  approximately $1 million based on historical pricing. Consequently, if Xianghuo's

7  inventory is removed by Amazon within the next approximately 30 days as

8  scheduled, there will be nowhere for Xianghuo to properly dispose of the returned

9  inventory. The longer the delisting remains in effect, the more severe the financial

10  strain becomes—jeopardizing the company's ability to restock, pay vendors, or meet

11  its financial obligations. *See* Decl. of Lijun Zheng, ¶ 16. The resulting loss is

12  difficult to quantify, as it includes not just inventory value but also associated fees,

13  lost sales momentum, and customer defection.

14    Finally, the harm is compounding daily. This is not a theoretical injury but

15  one already unfolding, and accelerating with each passing day. Unlike dbest, who

16  may be made whole through retrospective damages if infringement is later proven,

17  Xianghuo faces business extinction if relief is not granted.

18    Xianghuo's exclusion from participating in Amazon's Prime Day event,

19  which ended on July 11, 2025, has further exacerbated the seriousness of the

20  situation. In the immediate aftermath, Xianghuo's competitors have begun

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

20

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

occupying its former search rankings, jeopardizing its "Best Seller" status, diminishing its goodwill, including visibility to customers, and customer loyalty, and eroding its market share. *See* Decl. of Lijun Zheng, ¶ 4.

While Xianghuo was excluded from the event, its competitors quickly capitalized on the opportunity: IRIS USA's product (ASIN B0F5TCWXCD) now holds the No. 1 Best Seller Ranking ("BSR") in the storage box category; Sterilite's products (ASINs B0DYF5KNDG and B0DY22WH97) currently hold the No. 3 and No. 4 BSR positions, respectively. *See* Decl. of Lijun Zheng, ¶ 4.

Even if Amazon reinstates the Accused Products, it is highly unlikely that Xianghuo's goodwill and reputation—including its prior search rankings and advertising eligibility—will be restored. Once products are delisted, even for as brief as one month, they rarely regain their original status. Amazon's reinstatement does not encompass recovery of the underlying ranking factors that determine product visibility—commonly referred to as "search weight." The longer the delisting persists, the greater the adverse impact on search weight. *See* Decl. of Lijun Zheng, ¶ 5.

Amazon's ranking factors are critical to an Amazon seller's goodwill and reputation. For an Amazon seller, "No. 1 Best Seller" and "Amazon's Choice" designations constitute the most valuable intangible asset underpinning its goodwill and reputation. Even a one-month absence from the platform will highly likely

1  result in a permanent loss of Xianghuo's ranking strength, including Xianghuo's

2  "No. 1 Best Seller" and "Amazon's Choice" designations and  previously held first-

3  page placement status, the harm of which is substantial and irreparable. *See* Decl. of

4  Lijun Zheng, ¶ 6.

5      Accordingly, the irreparable harm to Xianghuo strongly favors entry of a

6  preliminary injunction.

7  **C.    The Balance of Hardships Favors a Preliminary Injunction**

8  **1.    Xianghuo Faces Severe and Irreparable Harm Absent Relief**

9      The balance of hardships strongly favors entry of a preliminary injunction

10 requiring Dbest to withdraw its Amazon infringement complaints. Without the

11 requested relief, Xianghuo faces the collapse of its business due to the delisting of

12 its best-selling product line from Amazon. As noted, Xianghuo relies exclusively on

13 Amazon as its sales channel, and the delisting threatens the continued viability of its

14 business.

15     By contrast, a preliminary injunction restoring Xianghuo's listings will have

16 minimal impact on Dbest. It will not suffer any loss of market access, goodwill, or

17 customer loyalty. Nor will a preliminary injunction prevent Dbest from pursuing its

18 patent claims in court, where its alleged rights can be adjudicated under full

19 adversarial process and, if warranted, compensated through money damages.

20     Importantly, in the unlikely event the factfinder determines Dbest ultimately

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

22

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

prevails on the merits of its infringement allegations, it may recover monetary relief in the form of lost profits or a reasonable royalty. See 35 U.S.C. § 284. The availability of such retrospective compensation means that Dbest will not suffer any irreparable injury by temporarily restoring Xianghuo's listings.

In sum, the comparative harms at stake are not close. Xianghuo faces business extinction without relief. Dbest faces no comparable hardship from a return to the status quo. The balance of equities weighs in favor of Xianghuo.

## 2. Monetary Relief, If Any, Is Enforceable Against Xianghuo in Both the United States and China

Xianghuo generates several million dollars in annual revenue — more than sufficient to cover any damages Dbest may allege. Moreover, Chinese courts have consistently recognized and enforced U.S. judgments in recent years under the principle of reciprocity since at least 2017. *See* Declaration of Qianwu Yang.

## D. The Public Interest Favors Issuing a Preliminary Injunction

The public interest also supports issuance of a preliminary injunction to restore Xianghuo's accused products to Amazon. Xianghuo's foldable storage boxes fill a vital niche in the e-commerce ecosystem: they are lightweight, easy to collapse and store, high quality and highly affordable. With a price range far lower than comparable premium brands, Xianghuo's products have consistently earned consumer recognition.

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

23

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1      Dbest's infringement complaints—based on likely invalid and/or

2   unenforceable patents and a dramatic overreach of their claimed scope—have

3   resulted in the immediate unavailability of these popular products. This harms not

4   only Xianghuo but also the millions of Amazon consumers who now face fewer and

5   more expensive alternatives. In a digital marketplace dominated by rapid fulfillment

6   and consumer trust in product rankings, allowing such delistings to stand without

7   judicial scrutiny risks distorting fair competition and reducing consumer choice.

8      Here, the public interest lies in preserving a competitive online marketplace

9   and ensuring that patent enforcement does not become a tool for suppressing

10  affordable alternatives. Granting a preliminary injunction will serve that interest by

11  restoring the status quo and ensuring that any restrictions on Xianghuo's products

12  are based on adjudicated facts, not unsupported allegations.

13     Moreover, in the present case, the public interest would in fact be benefited

14  by granting a preliminary injunction, because absent Amazon's policies, designed to

15  avoid Amazon's liability for intellectual property infringement, it would be the

16  claimed patent holder who would bear the burden of proving the patent infringement.

17  That burden is essentially shifted under Amazon's policies. To withhold a

18  preliminary would allow anyone to effectively shut down a competitor's business on

19  Amazon simply by filing numerous notices that the seller's products allegedly

20  infringe on the complaining party's patent. *See*, e.g., *Design Furnishings, Inc. v. Zen*

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION                                 24

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1 | *Path, LLC*, 2010 WL 5418893, at *8 (E.D. Cal. Dec. 23, 2010).

2 |   Given the ubiquity of Amazon shopping to the general public, the public has

3 | an interest in a full and fair online marketplace. The public interest favors

4 | preventing a competitor from using a seemingly innocuous intellectual property

5 | rights-protection notice to effectively shut down a competitor's business. *See*

6 | *Medcursor Inc. v. Shenzhen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 880

7 | (C.D. Cal. 2021).

8 | **V.    CONCLUSION**

9 |   For the foregoing reasons, Xianghuo respectfully requests that the Court grant

10 | its motion for preliminary injunction.

11 |             Respectfully submitted,

12 | DATED:  July 29, 2025      **SHM LAW FIRM**

13 |          By: *<ins>/s/ QIANWU YANG</ins>*
            QIANWU YANG  (Cal. Bar No. 336610)

14 |             yang@shm.law
            YI YI (Cal. Bar No. 353482)

15 |             yi.yi@shm.law
            AOYU YANG (Cal. Bar No. 360674)

16 |             yang.aoyu@shm.law

17 |             3000 El Camino Real
            Building 4, Suite 200
            Palo Alto, CA 94306

18 |             Telephone: (650) 613-9737
            Telephone: +8613925212009

19 |

20 |             *Attorneys for Defendant and*
            *Counterclaimant*
            DONGGUAN XIANGHUO TRADING
            CO., LTD.

COUNTERCLAIMANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

25

**SHM LAW FIRM**
3000 El Camino Real, Building 4, Suite 200
Palo Alto, CA 94306
(650) 613-9737

1

2

**CERTIFICATE OF SERVICE**

3

4    I hereby certify that on this day I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such

5

filing to all attorneys of record.

6

Dated: July 29, 2025                            */s/Aoyu Yang*

7                                                        Aoyu Yang

8

9

10

11

12

13

14

15

16

17

18

19

20