Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
Bruce Chapman (SBN 164258)
bruce@orbitip.com
**ORBIT IP, LLP**
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.: (310) 887-1333
Fax: (310) 887-1334

*Attorneys for Plaintiff and Counterdefendant
dbest products, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DBEST PRODUCTS, INC., a California corporation,<br><br>      Plaintiff and<br>      Counterclaim Defendant,<br><br>v.<br><br>DONGGUAN XIANGHUO TRADING CO., LTD., a Chinese company,<br><br>      Defendant and Counterclaim Plaintiff. | Case No. 2:25−cv−04573−MWC−JC<br><br>Hon. Michelle Williams Court<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE AND/OR DISMISS COUNTERCLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 AND FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>[*Memorandum of Points and Authorities; Declaration of Ehab M. Samuel; and [Proposed] Order filed concurrently herewith*]<br><br>Date:  September 12, 2025<br>Time: 1:30 p.m.<br>Ctrm: 6A |

## **NOTICE OF MOTION**

TO THE COURT, ALL PARTIES AND THEIR COUNSEL HEREIN:

PLEASE TAKE NOTICE that on September 12, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6A before the Honorable Michelle Williams Court of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiff dbest products, Inc. ("dbest") will, and hereby does, move this Court, pursuant to California's Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure Section ("CCP §") 425.16, and Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an order striking and/or dismissing without leave to amend each of the state law claims for relief asserted in the Counterclaim ("Counterclaim") filed by Defendant Dongguan Xianghuo Trading Co., Ltd. ("Dongguan").

Specifically, dbest seeks an order:

**(1)** striking Dongguan's unfair competition (Count VI) and tortious interference with contractual relationship (Count VII) counterclaims, pursuant to CCP § 425.16(a), because: (a) the claims arise from anti-SLAPP protected activity; and (b) Dongguan cannot establish a probability of prevailing on their counterclaims because (i) each of Count VI and Count VII fails to state a claim; (ii) the state law counterclaims are preempted by federal patent law; (iii) California's litigation privilege (California Civil Code section 47(b)) shields dbest from tort liability; and (iv) dbest's conduct is protected by the *Noerr-Pennigton* doctrine;

**(2)** dismissing without leave to amend Dongguan's unfair competition counterclaim (Count VI) pursuant to FRCP 12(b)(6), for failing to plead facts sufficient to demonstrate: (a) dbest's actions were "unfair," "unlawful, or "fraudulent" under California Business and Professions Code Section 17200; (b) it is not preempted by federal patent law; (c) California Civil Code section 47(b) does not exempt dbest; and (d) dbest's conduct is not protected by the *Noerr-Pennigton*

-1-

doctrine; and

**(3)** dismissing without leave to amend Dongguan's tortious interference counterclaim (Count VII) pursuant to FRCP 12(b)(6) for failing to plead facts sufficient to demonstrate: (a) dbest's actions were wrongful as a matter of law; (b) it is not preempted by federal patent law; (c) California Civil Code section 47(b) does not exempt dbest; and (d) dbest's conduct is not protected by the *Noerr-Pennington* doctrine.

PLEASE TAKE FURTHER NOTICE that if the Court grants the anti-SLAPP motion to strike Dongguan's state law counterclaims for unfair competition and tortious interference with contractual relationship, dbest will seek its attorney's fees and costs incurred in successfully bringing this motion, pursuant to CCP § 425.16(c), by way of a separate motion, against Dongguan.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ehab M. Samuel ("Samuel Decl."), the Proposed Order filed and submitted concurrently herewith; and upon such oral or documentary evidence or testimony that may be presented to this Court at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place through written correspondence exchanged between and among counsel for the parties between July 16, 2025 and July 23, 2025. (*See* Samuel Decl. at ¶¶ 2-4 and Exs. A-B.) Counsel for Dongguan refused to meet and confer by by remote video conference. *Id.*

1    DATED:  July 31, 2025              ORBIT IP, LLP

2

3                                       By:  _/s/ Ehab M. Samuel_____
                                             EHAB M. SAMUEL
4                                            DAVID A. RANDALL
                                             BRUCE CHAPMAN
5

6                                            *Attorneys for Plaintiff and*
                                             *Counterdefendant dbest products, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE AND/OR DISMISS COUNTERCLAIMS PURSUANT TO CCP § 425.16 AND FRCP 12(b)(6)**

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF RELEVANT FACTS ......................................................... 3

III.    THE COURT SHOULD STRIKE COUNTS VI AND VII UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ........................................ 4

    A.    Legal Standard ......................................................................... 4

    B.    dbest's Takedown Notices Further its Right to Petition ....................... 5

    C.    Dongguan Cannot Demonstrate Any Probability of Success ................ 7

        1.    Dongguan's Counterclaims Lack Essential Legal Elements for Both State Law Counts ........................................ 7

        2.    Dongguan's State Law Claims Are Preempted by Federal Patent Law ............................................................ 9

        3.    California's Litigation Privilege Immunizes dbest .................... 15

        4.    The *Noerr-Pennington* Doctrine Bars Dongguan's Claims ....... 18

IV.     THE COURT MUST DISMISS THE STATE LAW COUNTERCLAIMS UNDER FRCP 12(b)(6) .............................................. 19

V.      DONGGUAN IS NOT ENTITLED TO LEAVE TO AMEND .................... 20

VI.     DBEST IS ENTITLED TO ITS ATTORNEY'S FEES AND COSTS .......... 20

VII.    CONCLUSION ................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)……………………………………………………………...19

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)……………………………………………………………...19

*Beyond Blond Prods., LLC v. Heldman*
Case No. 2:20-cv-5581
2021 U.S. Dist. LEXIS 203255 (C.D. Cal. Feb. 8, 2021)……………………6, 17, 18

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
489 U.S. 141 (1989)……………………………………………………………...10

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal. 4th 1106 (1999)………………………………………………………...5

*Castaline v. Aaron Muellers Arts*
Case No. C 09-02543 CRB
2010 U.S. Dist. LEXIS 13111 (N.D. Cal. Feb. 16, 2010)…………………………...16

*Cove USA LLC v. No Bad Days Enterprises, Inc.*
Case No. 8:20-cv-02314-JLSKES
2021 U.S. Dist. LEXIS 154443 (C.D. Cal. July 2, 2021)…………………………..6

*Dollar Tree Stores Inc. v. Oyama Partners, LLC*
Case No. 3:10-cv-325
2010 U.S. Dist. LEXIS 49537 (N.D. Cal. Apr. 26, 2010)…………………………..9

*Enttech Media Grp. LLC v. Okularity, Inc.*
Case No. 2:20-cv-06298 RGK (Ex)
2020 U.S. Dist. LEXIS 222489 (C.D. Cal. October 2, 2020)………………………..18

*Equilon Enters., LLC v. Consumer Cause, Inc.*
29 Cal.4th 53 (2002)…………………………………………………………….4

*Fitbit, Inc. v. Laguna 2, LLC*
Case No. 17-cv-00079-EMC

2018 U.S. Dist. LEXIS 2402 (N.D. Cal. Jan. 5, 2018)……………………………6, 17

*Fortinet, Inc. v. Forescout Techs., Inc.*
Case No. 20-CV-03343-EMC
2021 U.S. Dist. LEXIS 228035 (N.D. Cal. Nov. 29, 2021)……………………10, 11

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*
362 F.3d 1367 (Fed. Cir. 2004)……………………………………………10, 11

*Golan v. Pingel Enter., Inc.*
310 F.3d 1360 (Fed. Cir. 2002)……………………………………………...11

*GWS Techs., Inc. v. Furth*
Case No. SACV 08-00586-CJC(PLAx)
2010 U.S. Dist. LEXIS 148908 (C.D. Cal. Mar. 25, 2010)……………………..6

*Hagberg v. Cal. Fed. Bank*
32 Cal. 4th 350 (2004)………………………………………………………16

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*
691 F. App'x 406 (9th Cir. 2017)………………………………………...18

*Hilton v. Hallmark Cards*
599 F.3d 894 (9th Cir. 2010)………………………………………………4

*Intamin Ltd. v. Magnetar Techs., Corp.*
483 F.3d 1328, 1338 (Fed. Cir. 2007)…………………………………………12

*Jat Wheels, Inc. v. DB Motoring Grp., Inc.*
Case No. CV 14-5097-GW(AGRx)
2016 U.S. Dist. LEXIS 191940 (C.D. Cal. Feb. 11, 2016)………………………10

*Johnson v. Nissan N. Am., Inc.*
272 F. Supp. 3d 1168 (N.D. Cal. 2017)………………………………………...8

*Kearny v. Foley & Lardner LLP, et al.*
553 F. Supp. 2d 1178 (S.D. Cal. 2008)……………………………………..20

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 1134 (2003)………………………………………………………9

-iii-

*Mansell v. Otto*
108 Cal. App. 4th 265 (2003)……………………………………………………………….16

*Martin v. Inland Empire Utilities Agency*
198 Cal. App. 4th 611 (2011)……………………………………………………………….21

*Navellier v. Sletten*
106 Cal. App. 4th 763 (2003)………………………………………………………………..5

*Neville v. Chudacoff*
160 Cal. App. 4th 1255 (2008)……………………………………………………………….6

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*
165 F. Supp. 3d 937 (S.D. Cal. 2016)……………………………………………………..8

*OG Int'l, Ltd. v. Ubisoft Entm't*
Case No. C 11-04980 CRB
2012 U.S. Dist. LEXIS 145408 (N.D. Cal. Oct. 9, 2012)………………………......18

*Oh v. ReconTrust Co.*
Case No. 21-01808
2022 U.S. Dist. LEXIS 26444 (C.D. Cal. Feb. 3, 2022)…………………………….20

*Peregrine Funding, Inc. v. Sheppard Mullin*
133 Cal.App.4th 658 (2005)………………………………………………………………..5

*Procongps, Inc. v. Star Sensor LLC*
Case No. C 11-3975 SI
2011 U.S. Dist. LEXIS 137366 (N.D. Cal. Nov. 29, 2011)………………………….13

*Q-Pharma, Inc. v. Andrew Jergens Co.*
360 F.3d 1295, 1302 (Fed. Cir. 2004)……………………………………………………12

*Quelimane Co. v. Stewart Title Guaranty Co.*
19 Cal. 4th 26 (1998)………………………………………………………………………..8

*Reed v. Wells Fargo Bank, N.A.*
Case No. 2:21-cv-07545-JVS-MRW
2022 U.S. Dist. LEXIS 132763 (C.D. Cal. Jun. 9, 2022)…………………………….20

-iv-

*Reid-Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*
Case No. C-06-4693 JCS
2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May 10, 2007)……………………………13

*Sandisk Corp. v. LSI Corp.*
Case No. C 09-02737 WHA
2009 U.S. Dist. LEXIS 93191 (N.D. Cal. Sept. 18, 2009)………………………12, 13

*Rock River Commc'ns., Inc. v. Univ. Music Group, Inc.*
745 F.3d 343 (9th Cir. 2014)……………………………………………………..18

*RPost Holdings, Inc. v. Trustifi Corp.*
Case No. CV 10-1416 PSG(SHx)
2010 U.S. Dist. LEXIS 113106 (C.D. Cal. Oct. 12, 2010)…………………………13

*Shande v. Zoox, Inc.*
Case No. 22-cv-05821-BLF
2024 U.S. Dist. LEXIS 91091 (N.D. Cal. May 21, 2024)………………………..6, 17

*Sharper Image Corp. v. Target Corp.*
425 F. Supp. 2d 1056 (N.D. Cal. 2006)……………………………………………16

*Sic Metals v. Hyundai Steel Co.*
442 F. Supp. 3d 1251 (C.D. Cal. 2020)……………………………………………9

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*
634 F. Supp. 2d 1009 (N.D. Cal. 2007)……………………………………………7

*Sosa v. DirecTV, Inc.*
437 F.3d 923 (9th Cir. 2006)……………………………………………………..18

*Sparrow LLC v. Lora*
Case No. CV-14-1188-MWF (JCX)
2014 U.S. Dist. LEXIS 199450 (C.D. Cal. Dec. 4, 2014)…………………………7

*Steckman v. Hart Brewing*
143 F.3d 1293, 1298 (9th Cir. 1998)………………………………………………20

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*
7 F.3d 1434, 1439 (9th Cir. 1993)………………………………………………...10

-v-

*Swafford v. IBM*
383 F. Supp. 3d 916 (N.D. Cal. 2019)……………………………………………………8

*Tensor Law P.C. v. Rubin*
Case No. 2:18-cv-01490-SVW-SK
2019 U.S. Dist. LEXIS 131942 (C.D. Cal. Apr. 10, 2019)………………………..5

*Theme Promotions, Inc. v. News Am. Mktg. FSI*
546 F.3d 991 (9th Cir. 2008)……………………………………………………..18

*Thimes Sols. v. Tp Link United States Corp.*
Case No. CV 19-10374 PA (Ex)
2020 U.S. Dist. LEXIS 138591 (C.D. Cal. June 8, 2020)………………………..6

*Thimes Sols., Inc. v. TP Link USA Corp.*
Case No. 21-55407
2022 U.S. App. LEXIS 10317 (9th Cir. Apr. 15, 2022)………………………17, 19

*TP Link United States Corp. v. Careful Shopper LLC*
Case No. 8:19-cv-00082-JLS-KES
2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar. 23, 2020)…………...5, 16, 17, 21

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*
Case No. CV 14-3466 MMM (JPRx)
2015 U.S. Dist. LEXIS 192159 (C.D. Cal. Oct. 30, 2015)…………………………16

*Verizon Delaware, Inc. v. Covad Comms. Co.*
377 F.3d 1081 (9th Cir. 2004)……………………………………………………..4

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003)……………………………………………4, 5, 21

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*
Case No. 10CV677 JLS (MDD)
2012 U.S. Dist. LEXIS 124506 (S.D. Cal. Aug. 31, 2012)…………………………13

*Zenith Elecs. Corp. v. Exzec, Inc.*
182 F.3d 1340 (Fed. Cir. 1999)……………………………………………………10

1

## STATUTES

2

Cal. Civ. Code § 47(b)……………………………………………………*passim*

3

Cal. Code Civ. Proc. § 425.16……………………………………………*passim*

4

Fed. R. Civ. P. 12(b)(6)……………………………………………...2, 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO
STRIKE AND/OR DISMISS COUNTERCLAIMS PURSUANT TO CCP § 425.16 AND FRCP 12(b)(6)**

## I.    INTRODUCTION

Dongguan's Counterclaim exemplifies (over)zealous advocacy run amok. For starters, its counsel violated Local Rule 7-3 by flatly refusing to attend the scheduled meet and confer regarding this motion, responding in a dismissive and unprofessional manner:

> "While it is always a pleasure to speak with you over Zoom, I don't believe this is the right time. ***So, please enjoy your solo performance***." [1]

Samuel Decl., Ex. A (emphasis added).

Plaintiff dbest initiated this lawsuit to defend its patents against unscrupulous sellers, like Dongguan, conducting illegal, unauthorized sales of infringing products on Amazon's online marketplace. In the related case—*iBeauty Limited Company et al. v. dbest products, Inc.*, Case No. 2:24-cv-10694-MWC-JC—this Court granted in part dbest's dispositive anti-SLAPP motion and motion to dismiss the same specie of state law claims (related to dbest's U.S. Patent No. 11,478,576 (the "576 Patent")) based on Dongguan's representation (and its co-plaintiffs in the case) that they would voluntarily withdraw those claims. (*See* Dkt. No. 45.) Yet, Dongguan now reasserts those same baseless claims here, notwithstanding its earlier representations to the Court.

Putting aside Dongguan's procedural misconduct and prior (estoppel warranting) representations to this Court for the moment, its repackaged state law

---

[1] Dongguan's willful misbehavior calls for the imposition of sanctions under Local Rule 83-7.  Local Rule 83-7 provides: "The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to: (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless; (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances."

claims in Counts VI (for unfair competition) and VII (for tortious interference) of its
Counterclaim against dbest—based entirely on dbest's submission of post-litigation
Amazon takedown notices—are deficient as a matter of law on two independent
statutory grounds.

First, California's Anti-SLAPP Statute (CCP § 425.16) immunizes
intellectual property owners from liability for excursing their legal rights to
petition—rights that include enforcement through Amazon's takedown mechanism.
Courts consistently hold that such notices constitute protected activity under §
425.16. Dongguan's state claims fail both procedurally and substantively.
*First*, each of Count VI and Count VII fails to state a claim for relief by lacking a
material element of each claim—*i.e.*, that dbest's takedown notices constitute
"wrongful," "unfair," or "unlawful" conduct.  *Second*, even if the claims could be
appropriately pled (they cannot be), Dongguan cannot establish with competent
evidence—as it must in response to an anti-SLAPP motion—that dbest has operated
in subjective or objective "bad faith" to avoid both state law claims being preempted
by federal patent law.  *Third*, California's litigation privilege, under California Civil
Code section 47(b), shields dbest's alleged post-litigation conduct from tort liability.
*Finally*, the *Noerr-Pennington* doctrine provides further immunity for dbest's
petitioning conduct in connection with this very litigation, especially related post-
litigation communications.  The Court should strike the claims under CCP § 425.16.

Second, Federal Rule of Civil Procedure 12(b)(6) independently requires
dismissal for the same reasons: the absence of essential elements, the preemptive
force of federal patent law, the application of litigation privilege, and Noerr-
Pennington immunity. Because Dongguan's claims are entirely premised on dbest's
legally protected takedown activity, amendment would be futile. The Court should
dismiss both claims with prejudice.

Finally, pursuant to CCP 425.16(c) dbest respectfully requests an award of
attorneys' fees and costs incurred in moving to strike Dongguan's meritless claims.

-2-

## II.    STATEMENT OF RELEVANT FACTS

dbest is a Carson, California company that designs and sells innovative collapsible products for storage. (*See* Counterclaim, Dkt. 16, at ¶¶ 9, 32, 36 & Exs. 1-2.)  To protect its inventions, dbest obtained U.S. Patent No. 12,275,446 (the "'446 Patent") for "High Load Capacity Collapsible Carts," issued on April 15, 2025 and the U.S. Patent No. 12,304,546 (the "'546 Patent") for "Collapsible Carts," issued on May 20, 2025.  (*See id.*) Dongguan is a China-based seller of "storage bins" on Amazon's online marketplace for selling goods directly to consumers, including in the United States.  (*See id.* at ¶¶ 5-8.)

On May 21, 2025—the day after dbest obtained the '546 Patent and less than a month after it obtained the '446 Patent—dbest filed this lawsuit against Dongguan. (*See* Complaint.)  dbest's lawsuit alleged that Donguan's products infringed on both the '446 and '546 Patents.  (*See id.*)  dbest's complaint also attached claim charts mapping exactly how Dongguan's product violates Claim 22 of the '446 Patent and Claim 9 of the '546 Patent.  (*See* Complaint at Exs. D & E.)

On June 23, 2025, as part of a broad, wide-ranging litigation enforcement plan to identify and pursue a large swath of infringers, dbest requested that Amazon takedown certain listings of Dongguan's products based on infringement of the '446 and '546 Patents. (*See* Samuel Decl. at ¶ 5.)  Over a month *after* dbest filed this lawsuit, and after dbest reported to Amazon, on or around July 1, 2025, Amazon notified Dongguan that Amazon had removed certain of Dongguan's storage bin goods from its online marketplace due to dbest's takedown request.  (*See* Counterclaim at ¶¶ 19-21.)

On July 10, 2025, in response, Dongguan filed an answer and the instant Counterclaim.  The Counterclaim alleges seven counts: (1) declaratory judgment of non-infringement and invalidity against one or more claims of the '446 and '546 Patents (Counts I through V), (2) unfair competition (Count VI), and (3) tortious interference (Count VII).

-3-

## III.  THE COURT SHOULD STRIKE COUNTS VI AND VII UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

### A.  Legal Standard

California's anti-SLAPP law seeks to curtail "strategic lawsuits against public participation [given] a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Therefore, even a party "sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail." *Verizon Delaware, Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

Courts follow a two-step process for analyzing a motion to strike a SLAPP suit. *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).

*Step One:* The moving defendant—here, dbest—must make "a threshold showing ... that the act or acts of which the [plaintiff] complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (quotations omitted). The moving defendant only needs to show that the alleged acts fall within the ambit of CCP § 425.16(e).  *See Vess*, 317 F.3d at 1110; *see also Tensor Law P.C. v. Rubin*, Case No. 2:18-cv-01490-SVW-SK, 2019 U.S. Dist. LEXIS 131942, at *4 (C.D. Cal. Apr. 10, 2019) (quotations omitted) (the moving party's burden is "only to make a prima facie showing of protected activity, which is 'not an onerous one.'"). Importantly, the moving defendant the defendant is not required to show that the plaintiff brought suit with the intent to chill speech, nor that any speech was in fact chilled.  *See Vess*, 317 F.3d at 1110.

*Step Two:* Once the defendant makes a prima facie showing, the burden shifts to the plaintiff—here, Dongguan—to demonstrate a probability of prevailing on the

challenged claims. *See id.* The plaintiff **must produce evidence that is admissible at trial establishing facts sufficient** to support a favorable judgment on its claims. *See Navellier v. Sletten*, 106 Cal. App. 4th 763, 768 (2003) ("plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment"). On the other hand, the defendant may simply "defeat a cause of action by showing [the plaintiff] cannot establish an element of [its] cause of action or by showing there is a complete defense to the cause of action...." *Peregrine Funding, Inc. v. Sheppard Mullin,* 133 Cal.App.4th 658, 676 (2005). When a proper showing cannot be made under the second part of the inquiry, the causes of action should be stricken. *See Vess*, 317 F.3d at 1110.

Dongguan's state law claims fail both steps of this two-part inquiry.

## B.    dbest's Takedown Notices Further its Right to Petition

Under California's anti-SLAPP statute, "protected activity" includes "any act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue," which encompasses "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e). This expressly includes "written or oral statements . . . made in connection with an issue under consideration or review by a [] judicial body." CCP § 425.16(e)(2).  "[T]he California Supreme Court has held that 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within' the broad ambit of and entitled to protection under § 425.16." *TP Link United States Corp. v. Careful Shopper LLC*, Case No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *14-15 (C.D. Cal. Mar. 23, 2020) (quoting *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)).  Notably, this protection extends to communications made to private third parties, so long as the communication relates to issues in litigation and is directed to parties with an

1  interest in the matter. *GWS Techs., Inc. v. Furth*, Case No. SACV 08-00586-

2  CJC(PLAx), 2010 U.S. Dist. LEXIS 148908, *2 (C.D. Cal. Mar. 25, 2010) ("A

3  statement is made in connection with litigation . . . 'if it relates to the substantive

4  issues in the litigation and is directed to persons having some interest in the

5  litigation.'") (citing *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008)).

6        There is no question that the Amazon takedown notices forming the basis of

7  Dongguan's Counterclaim fall squarely within the scope of protected activity under

8  § 425.16. Dongguan's own allegations make clear that the supposed "misconduct" is

9  dbest's act of submitting Amazon takedown requests alleging infringement of its

10  patents. Those communications were not only lawful but directly in furtherance of

11  dbest's *existing* litigation—a foundational step in enforcing its patent rights.

12        Courts uniformly hold that takedown notices to online marketplaces, like

13  Amazon, are SLAPP protected activity especially when they are related to live

14  litigation. *See, e.g., Beyond Blond Prods., LLC v. Heldman*, Case No. 2:20-cv-5581,

15  2021 U.S. Dist. LEXIS 203255, at *18 (C.D. Cal. Feb. 8, 2021) (takedown notices

16  to Amazon and related communications forming the basis of state law claims

17  constitute anti-SLAPP protected prelitigation activity); *Thimes Sols. v. Tp Link

18  United States Corp.*, Case No. CV 19-10374 PA (Ex), 2020 U.S. Dist. LEXIS

19  138591, at *16 (C.D. Cal. June 8, 2020), rev'd in part on other grounds at 2024 U.S.

20  App. LEXIS 7335 (Apr. 15, 2022) (takedown notices to Amazon.com "constitute

21  prelitigation communications that fall within California's anti-SLAPP statute

22  protections"); *Fitbit, Inc. v. Laguna 2*, LLC, Case No. 17-cv-00079-EMC, 2018 U.S.

23  Dist. LEXIS 2402, at *14 (N.D. Cal. Jan. 5, 2018) (infringement notices sent to

24  Groupon were "reasonably relevant" to the "subject matter" of the lawsuit); *Cove

25  USA LLC v. No Bad Days Enterprises, Inc.*, Case No. 8:20-cv-02314-JLSKES, 2021

26  U.S. Dist. LEXIS 154443, at *4 (C.D. Cal. July 2, 2021) ("Communications [to

27  Shopify] made to enforce intellectual property rights . . . are protected by the anti-

28  SLAPP statute even if the alleged infringer initiated the lawsuit"); *Shande v. Zoox,*

1    *Inc.*, Case No. 22-cv-05821-BLF, 2024 U.S. Dist. LEXIS 91091, at *17-18 (N.D.

2    Cal. May 21, 2024) (letter "constituted protected activity under the anti-SLAPP

3    statute because it was a communication to enforce [] intellectual property rights");

4    *Sparrow LLC v. Lora*, Case No. CV-14-1188-MWF (JCX), 2014 U.S. Dist. LEXIS

5    199450, at *5 (C.D. Cal. Dec. 4, 2014) ("letters to and communications with

6    companies doing business or contemplating business with Defendants and relating

7    to the alleged infringement of Plaintiff's intellectual property that form the basis of

8    the [] litigation, were protected activities covered by the anti-SLAPP statute").

9          This case is no different.  Dongguan's state law Counts VI and VII rest

10   entirely on dbest's post-filing takedown requests to Amazon regarding alleged

11   patent infringement—precisely the type of activity § 425.16 was enacted to protect.

12   As such, dbest easily satisfies the first prong of the anti-SLAPP analysis.

13         **C.    Dongguan Cannot Demonstrate Any Probability of Success**

14         Because dbest satisfies the first prong of the anti-SLAPP analysis, the burden

15   now shifts to Dongguan to establish "a probability [of] prevail[ing] on the claim."

16   CCP § 425.16(b)(1). To meet this burden, Dongguan must not only substantiate its

17   claims with admissible evidence but also overcome substantive legal defenses such

18   as the litigation privilege. *See Sparrow LLC*, 2014 U.S. Dist. LEXIS 199450, at *5.

19   Dongguan cannot do so.

20         **1.    Dongguan's Counterclaims Lack Essential Legal Elements for
21             Both State Law Counts**

22         As a preliminary matter, Dongguan cannot establish essential elements of

23   either Count VI or Count VII as a matter of law.  To state a claim for unfair

24   competition (Count VI) pursuant to California Business and Professions Code §

25   17200, a "plaintiff must establish that the practice is either unlawful (i.e., is

26   forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent

27   (i.e., is likely to deceive members of the public)." *Sonoma Foods, Inc. v. Sonoma

28   Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (citations

-7-

omitted); *see also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1182 (N.D. Cal. 2017) ("unlawful" business practice limited to illegal activities); *Swafford v. IBM*, 383 F. Supp. 3d 916, 936 (N.D. Cal. 2019) ("unfair" business practice limited to violations of established public policy or immoral, unethical, oppressive, unscrupulous, and injurious acts that outweigh their benefits).

Dongguan cannot **establish with evidence** that dbest's takedown challenges to Amazon could satisfy any of these elements.  First, Dongguan does not—and cannot—allege (nor could it prove) that sending patent infringement notices for the '446 and '546 Patents was "unlawful." There is no statute or rule prohibiting a patent holder from invoking Amazon's infringement reporting system to protect its intellectual property.  Second, Dongguan cannot demonstrate that dbest's business practice was "unfair."  dbest acted to enforce its duly issued patent rights—a process authorized under federal and state law. Reporting potential infringement through Amazon's established procedures is neither immoral nor unscrupulous, and cannot plausibly be characterized as conduct whose harms outweigh its benefits. If such enforcement were deemed "unfair," every effort to protect patent rights online would fall under the UCL. Third, Dongguan does not even attempt to plead a *fraudulent* practice. To do so, it would need to allege a business practice likely to deceive members of the public. *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 952 (S.D. Cal. 2016) (citation omitted). Dongguan makes no such allegation, nor can it support one with evidence.

Dongguan's Count VII fares no better.  For a claim for intentional interference with contractual relations to survive, Dongguan needed to plead "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).  Dongguan does not identify, much less substantiate

-8-

with evidence, any actual breach or disruption of a contract—whether with Amazon or any other party. Nor does it provide evidence of resulting damages. This alone is fatal.

Moreover, Dongguan's tortious interference claim fails for an independent reason: dbest acted to protect and enforce its patent rights. If a party engages in alleged interference "to enforce its rights, it cannot be held liable for intentional interference with a contract even if it knew that such conduct might interrupt a third party's contract." *Sic Metals v. Hyundai Steel Co.*, 442 F. Supp. 3d 1251, 1258 (C.D. Cal. 2020); *see also Dollar Tree Stores Inc. v. Oyama Partners, LLC*, Case No. 3:10-cv-325, 2010 U.S. Dist. LEXIS 49537, at *11-12 (N.D. Cal. Apr. 26, 2010) (granting motion to dismiss tortious interference claim where defendant "act[ed] with a legitimate business purpose").

Finally, Dongguan fails to allege or prove that dbest's conduct was independently *wrongful*, as required under California law. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) ("a plaintiff must plead that the defendant engaged in an act that is wrongful apart from the interference itself")

In short, Dongguan cannot establish any probability of prevailing on its claims—either as a matter of pleading or proof. Its Counterclaims should be stricken under CCP § 425.16.

### 2. Dongguan's State Law Claims Are Preempted by Federal Patent Law

Dongguan's state law claims (Counts VI and VII) are entirely predicated on dbest's patent infringement takedown notices submitted to Amazon. Likewise, Dongguan's declaratory judgment claims (Counts I–V) hinge on whether Dongguan infringed dbest's '446 and '546 Patents. Thus, both the state law claims and the declaratory relief claims rest on the same underlying issue—alleged patent infringement. Because the gravamen of Dongguan's state law counts is identical to the core federal issue of patent enforcement, the state law claims are preempted.

As such, even if Dongguan could properly plead or prove Counts VI and VII (it cannot), the state law claims are preempted by federal patent law.  It is well established that federal patent law preempts state law claims that intrude upon the domain reserved to Congress. As the Ninth Circuit has recognized: "[f]ederal patent and copyright laws limit the states' ability to regulate unfair competition. According to the Supreme Court, state law is preempted when it enters 'a field of regulation which the patent laws have reserved to Congress.'" *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1439 (9th Cir. 1993).  Where, as here, the core of the state law claim turns on whether the defendant's conduct constitutes patent infringement, the claim is preempted. *See id.* ("To the extent that Summit may complain that Victor has "pirated" its lathe by employing a particularly unfair method of copying, such a claim is preempted by federal law");  *see also Jat Wheels, Inc. v. DB Motoring Grp., Inc.*, Case No. CV 14-5097-GW(AGRx), 2016 U.S. Dist. LEXIS 191940, at *6-7 (C.D. Cal. Feb. 11, 2016) (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167-168 (1989) and *Summit Mach. Tool Mfg. Corp.*, 7 F.3d at 1439-40 ("Plaintiff's allegations of unfair competition are preempted by federal patent law because they are predicated upon claims of [infringement].  Because Plaintiff has not alleged any additional tortious conduct that is separate from the patent law cause of action, preemption applies").

Given that federal patent law preempts state-law tort liability for good faith conduct in communications asserting patent infringement and potential litigation, state-law tort claims can only survive only if based on "a showing of 'bad faith' action in asserting infringement[.]" *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). "Patent law 'recognizes a presumption that the assertion of a duly granted patent is made in good faith'; therefore, the party arguing against the preemption has the burden of ***proving*** bad faith. *Id.* at 1374-77 (internal citations omitted); *see also Fortinet, Inc. v. Forescout Techs., Inc.*, Case

-10-

No. 20-CV-03343-EMC, 2021 U.S. Dist. LEXIS 228035, at *61-62 (N.D. Cal. Nov. 29, 2021) (internal citations omitted) ("to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim….[A] party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry.")

To overcome this presumption, Dongguan must establish both objective and subjective bad faith with clear and convincing evidence. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). The objective component requires a showing that the infringement allegations are "objectively baseless." *Id.* (citing *Globetrotter*, 362 F.3d at 1375). The subjective component relates to a showing that the patentee demonstrated "subjective bad faith" in enforcing the patent. *Globetrotter*, 362 F.3d at 1370. A party claiming bad faith patent enforcement "must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial." *Fortinet*, 2021 U.S. Dist. LEXIS 228035, at *66 (internal citation omitted).

Dongguan has no evidence demonstrating objective or subjective bad faith.

### a)    No Objective Bad Faith

Dongguan merely infers in a conclusory fashion in its Counterclaim that there is objective bad faith because "[u]pon information and belief, dbest did not obtain samples of Xianghuo's Non-Infringing Products prior to filing its complaint with Amazon alleging Xianghuo's infringement."  (Counterclaim, Dkt. 16 at ¶ 22.)  For anti-SLAPP analysis, Dongguan **is required to prove with competent evidence**– not speculation—showing at bare minimum: (1) that physical testing was necessary to obtain infringement-related information that could not be determined from publicly available product listings or images; (2) what specific type of testing dbest was allegedly required to perform; (3) that such testing would have revealed material, information not otherwise publicly available in its product listings or

-11-

1  images; and (4) that dbest could not reasonably rely on publicly available materials

2  to perform a good faith infringement analysis.

3      Here, the record conclusively refutes Dongguan's claims. Exhibits D and E to

4  the Complaint contain a detailed, claim-by-claim infringement analysis of

5  Dongguan's products under both the '446 and '546 Patents—conducted before dbest

6  submitted takedown notices or filed suit. Moreover, it is well settled that pre-suit

7  testing is not a prerequisite to a valid infringement allegation. *See, e.g., DexCom,*

8  *Inc. v. AgaMatrix, Inc.*, Case No. CV 16–05947 SJO (ASx), 2016 U.S. Dist. LEXIS

9  193464, at *8 (C.D. Cal. Nov. 28, 2016) (citing *Intamin Ltd. v. Magnetar Techs.,*

10 *Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007)) ("The consensus among [] courts is

11 that testing is not required when the testing would be unreasonably difficult, when

12 the test results would be uninformative as to infringement, or when other pre-filing

13 analysis is conducted…"); *see also Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d

14 1295, 1302 (Fed. Cir. 2004) ("an infringement analysis can simply consist of a good

15 faith, informed comparison of the claims of a patent against the accused subject

16 matter.").

17     Dongguan identifies no product feature that required physical inspection, nor

18 does it offer any evidence that dbest's pre-suit analysis was incomplete, inaccurate,

19 or unreasonable. On that basis alone, Dongguan's theory of objective bad faith

20 collapses. Courts routinely reject unsupported bad faith claims at the pleading stage

21 when based on mere speculation. *See, e.g., Sandisk Corp. v. LSI Corp.*, Case No. C

22 09-02737 WHA, 2009 U.S. Dist. LEXIS 93191, at *3 (N.D. Cal. Sept. 18, 2009)

23 (dismissing the plaintiff's claim when the plaintiff alleged that the defendant "knew

24 or should have known its allegations of infringement were false" but failed to

25 provide any specific facts to support such an assertion and because the defendant

26 had analyzed and determined that plaintiff's products infringed).

27     In *Sandisk*, the court was clear that "SanDisk is merely stating what it

28 believes without providing any specific facts showing the basis for its information

-12-

and beliefs. Such statements, which are not amplified by any facts, do not allow a
judge to make any reasonable inferences of bad faith.…" *Sandisk Corp.*, 2009 U.S.
Dist. LEXIS 93191, at *6; *see also Weiland Sliding Doors & Windows, Inc. v.
Panda Windows & Doors, LLC*, Case No. 10CV677 JLS (MDD), 2012 U.S. Dist.
LEXIS 124506, at *5-6 (S.D. Cal. Aug. 31, 2012) (granting motion to dismiss
counterclaims with prejudice because "[a]lthough Panda correctly asserts that it is
'not obligated to prove this fact at the pleading stage,' as the Court has already twice
indicated, Panda must do more than simply conclusively assert that Weiland's
communications were made in bad faith"); *Procongps, Inc. v. Star Sensor LLC*,
Case No. C 11-3975 SI, 2011 U.S. Dist. LEXIS 137366, at *8 (N.D. Cal. Nov. 29,
2011) (granting motion to dismiss because party "must also allege facts in support
of its allegation that [plaintiff] is asserting patents it knows are not valid and not
infringed; it is not sufficient to simply make such an allegation 'on information and
belief.'"); *RPost Holdings, Inc. v. Trustifi Corp.*, Case No. CV 10-1416 PSG(SHx),
2010 U.S. Dist. LEXIS 113106, at *11 (C.D. Cal. Oct. 12, 2010) (granting motion to
dismiss where defendant conclusively alleged that plaintiffs knew the accused
instrumentality did not infringe the patents before communicating otherwise to the
marketplace, stating that "[d]efendant's belief that Plaintiffs had such knowledge, . .
. is not sufficient to overcome the presumption of good faith."); *compare Reid-
Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*, Case No. C-06-4693 JCS,
2007 U.S. Dist. LEXIS 37665, at *28-29 (N.D. Cal. May 10, 2007) (emphasis
added) (counterclaim alleged that Reid-Ashman "'had ***never adequately inspected***
Swanson's manipulators prior to suit;' 2) the pictures Reid-Ashman took of
Swanson's allegedly infringing product where unauthorized and ***were of the
prototype rather than of the product***; and 3) the product Reid-Ashman was offering
in competition with Swanson's product '***does not appear to be the same product
which [Reid-Ashman] patented.***').

      Here, dbest's pre-suit conduct is not only well-documented but entirely

consistent with federal law and the presumptive good faith afforded to patent enforcement actions. Dongguan's failure to identify a single specific defect in dbest's analysis—or to demonstrate why any testing would have yielded materially different results—renders its objective bad faith theory meritless.

Against this backdrop, Donnguan accuses dbest that it deliberately withheld HAIXIN Chinese Patent No. CN214987334 ("the '334 Patent") from the USPTO. (Counterclaim, Dkt. 16 at ¶¶ 56, 79-80.)  But this claim is demonstrably false. When dbest first became aware of the '334 Patent through prior accusations asserted by Donnguan in the related *iBeauty Limited Company et al. v. dbest products, Inc.* matter (C.D. Cal. Case No. 2:24-cv-10694-MWC-JC ("iBeauty Action"), dbest promptly disclosed this foreign patent to the USPTO during the prosecution of both the '446 Patent and the '546 Patent. The '334 Patent was considered by the Examiner and, as shown below, listed on the face of the asserted patents, thus undermining Donnguan's narrative regarding alleged inequitable conduct or improper concealment.

| | | | | FOREIGN PATENT DOCUMENTS | | |
|---|---|---|---|---|---|---|
| CN | 112918890 A | 6/2021 | | CN | 112918890 A | 6/2021 |
| CN | 214777508 | 11/2021 | | CN | 214987334 U | 12/2021 |
| CN | 214987334 U | 12/2021 | | | (Continued) | |

**Annotated Excerpt from '446 Patent (Dkt. 1-1), Page 2** | **Annotated Excerpt from '546 Patent (Dkt. 1-2), Page 1**

Worse still, Dongguan's allegations conflate the prosecution history of an entirely different patent—the '576 Patent—with that of the asserted patents, without any explanation of how that record could in any way affect the validity, enforceability, or infringement analysis of the '446 or '546 Patents, much less demonstrate how that evinces objective bad faith.

In sum, Dongguan's allegations rest entirely on conjecture. Because Dongguan has not—and cannot—produce evidence of objective bad faith, its state law claims are preempted and should be dismissed.

1

b)        No Subjective Bad Faith

2        Dongguan also fails to show that dbest acted with subjective bad faith. To the

3 contrary, the record reflects that dbest prepared detailed, pre-suit infringement charts

4 comparing Dongguan's accused products to the asserted claims of the '446 and '546

5 Patents. These materials—attached as Exhibits D and E to the Complaint—

6 demonstrate a thorough and reasoned analysis of the specific features dbest contends

7 are covered by its patent claims. *See also* Samuel Decl., Ex. C. That analysis was

8 completed prior to any takedown notice or filing of this lawsuit, and it relied on the

9 same publicly available product information Dongguan used to market its own

10 goods. In addition, pursuant to this Court's Standing Order in the related iBeauty,

11 dbest is preparing to and will serve Dongguan with its disclosure of asserted claims

12 and infringement contentions on August 1, 2025.  (*See* Samuel Decl. at ¶ 7.).

13        Dongguan's baseless accusations of inequitable conduct or improper

14 concealment cannot overcome this clear record of good faith. Moreover, its attempt

15 to tie dbest's assertion of the '446 and '546 Patents to alleged nondisclosures

16 involving the '576 Patent—which is not asserted in this case—underscores the

17 weakness of its position. Not only does Dongguan fail to explain how anything in

18 the '576 Patent's record affects the enforceability or validity of the '446 or '546

19 Patents, it also ignores the fact that the asserted patent claims are entitled to a

20 January 2020 priority date—well before the cited Haixin patent. There is no

21 plausible theory under which dbest's conduct in asserting its utility patents

22 constitutes subjective bad faith.

23        Thus, Dongguan's state law causes of action are preempted and must be

24 dismissed as a matter of law.

25        **3.    California's Litigation Privilege Immunizes dbest**

26        California's litigation privilege under California Civil Code Section 47(b)

27 provides absolute immunity for communications made in connection with judicial

28 proceedings. Specifically, it protects any "publication or broadcast" made "in the

-15-

initiation or course of any other proceeding authorized by law." Cal. Civ. Code § 47(b)(4).  This litigation privilege is interpreted broadly and extends to all communications that are: (1) made in a judicial proceeding; (2) by a litigant or other authorized participant; (3) intended to achieve the objects of the litigation; and (4) logically connected to the action.  *See, e.g., Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citations omitted); *Hagberg v. Cal. Fed. Bank* , 32 Cal. 4th 350, 361 (2004) (citations omitted) ("Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit"); *Castaline v. Aaron Muellers Arts*, Case No. C 09-02543 CRB, 2010 U.S. Dist. LEXIS 13111, at *11 (N.D. Cal. Feb. 16, 2010) (same).

Importantly, the California litigation privilege "is absolute," and is not subject to any exception based on the alleged bad faith of the accuser. *See, e.g., TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23-24 (citations omitted) ("Even fraudulent, deliberately false, or other types of tortious communication must be susceptible to coverage by the litigation privilege; if that were not true, the privilege would be unable to achieve its purpose of ensuring that fear of being subjected to derivative tort suits does not prevent open communication and the 'utmost freedom of access to the courts' and other channels of redress"); *Mansell v. Otto*, 108 Cal. App. 4th 265, 277 n.47 (2003) ("the presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,* Case No. CV 14-3466 MMM (JPRx), 2015 U.S. Dist. LEXIS 192159, at *62 (C.D. Cal. Oct. 30, 2015) ("there is no exception to the litigation privilege for communications made in bad faith").

Consequently, takedown notices to Amazon are litigation privileged as a matter of law. Courts have repeatedly held that such notices—particularly when

connected to pending or imminent litigation—are protected from tort liability under
Section 47(b). *See, e.g., Beyond Blond Prods.*, 2021 U.S. Dist. LEXIS 203255, at
*20 (holding that defendants' submission of takedown notices to Amazon and
related communications qualify as protected speech under section 425.16 and are
also barred from tort liability by the litigation privilege) *See, e.g., TP Link United
States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *23 (granting anti-SLAPP motion
and noting that "the litigation privilege is intended to protect the sort of
communication at issue here, the reporting of suspected wrongdoing to a party
capable of halting or remedying it"); *Fitbit, Inc.,* 2018 U.S. Dist. LEXIS 2402, at
*27 (applying litigation privilege to infringement notice sent to third-party
Groupon); *Shande*, 2024 U.S. Dist. LEXIS 91091, at *17-18 (same).

Here, there is no dispute that dbest's Amazon takedown notices based on the
'446 and '546 patents fall squarely within the scope of the privilege. ***dbest had
already initiated this lawsuit***—supported by detailed infringement claim charts—
against Dongguan ***prior to making its Amazon complaint***. In fact, Dongguan
concedes that Amazon notified it of the takedown on or around July 1, 2025—**more
than a month after** dbest filed suit. (Counterclaim ¶¶ 19–21.)  By that time, live
litigation was already underway, and dbest's communications to Amazon were
plainly made in furtherance of that proceeding. These facts place dbest's conduct
well within the settled scope of Section 47(b), which immunizes litigation-related
communications regardless of the forum in which they are made.

Consequently, *Thimes Sols., Inc. v. TP Link USA Corp.*, Case No. 21-55407,
2022 U.S. App. LEXIS 10317, at *1 (9th Cir. Apr. 15, 2022) is wholly inapplicable.
In *Thimes*, while not in of itself necessarily determinative, the intellectual property
holder had not yet even filed a lawsuit.  *Compare Beyond Blond Productions, LLC
v. Heldman* , CV 20-5581 DSF (GJSx), 2021 U.S. Dist. LEXIS 203255, at *20
(C.D. Cal. Feb. 8, 2021) (holding that defendants' submission of takedown notices
to Amazon are barred from tort liability by the litigation privilege).  In fact, *Beyond*

-17-

*Blond* expressly considered *Thimes* and found it limited to its specific facts, concluding it did not alter the litigation privilege analysis. *See Beyond Blond*, 2022 U.S. Dist. LEXIS 132759, at *6-7.  The Court should find the same here. Thus, California's litigation privilege is an absolute bar to Dongguan's state law claims.

### 4.   The *Noerr-Pennington* Doctrine Bars Dongguan's Claims

The Noerr-Pennington doctrine provides constitutional immunity from liability for conduct that constitutes petitioning the government, including access to courts. As the Ninth Circuit has explained, 'The right of access to the courts is . . . one aspect of the right of petition.'" *OG Int'l, Ltd. v. Ubisoft Entm't*, Case No. C 11-04980 CRB, 2012 U.S. Dist. LEXIS 145408, at *5 (N.D. Cal. Oct. 9, 2012) (quoting *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). The doctrine also extends to "[c]onduct incidental to a lawsuit, including a pre-suit demand letter" and immunizes claims arising out of such communications.  *Theme Promotions, Inc. v. News Am. Mktg.*, 546 F.3d 991, 1007 (9th Cir. 2008) ("There is no reason that Noerr-Pennington and California privilege law cannot both apply to [the] intentional interference claims, and we hold that the district court properly considered both doctrines"); *Rock River Commc'ns., Inc. v. Univ. Music Group*, 745 F.3d 343, 351 (9th Cir. 2014) (infringement notice to accused infringer's business partners protected).

Courts have repeatedly held that intellectual property holders' takedown notices to online marketplaces like Amazon are petitioning activities protected under the Noerr-Pennington doctrine. *See, e.g., Hard2Find Accessories, Inc. v. Amazon.com, Inc*., 691 F. App'x 406, 408 (9th Cir. 2017) (takedown notice to Amazon.com protected by *Noerr-Pennington* immunity); *Enttech Media Grp. LLC v. Okularity, Inc.*, Case No. 2:20-cv-06298 RGK (Ex), 2020 U.S. Dist. LEXIS 222489, at *11 (C.D. Cal. October 2, 2020) (holding that *Noerr-Pennington* applied to takedown notice to Instagram); *OG Int'l, Ltd.*, 2012 U.S. Dist. LEXIS 145408, at *8 ("the fact that Crave and GameStop were never sued and are non-parties to the

-18-

present suit does not preclude application of Noerr-Pennington immunity").

Here, dbest's takedown notices fall squarely within the scope of that protection. dbest had already filed suit against Dongguan before submitting any complaints to Amazon regarding infringement of the '446 and '546 Patents. As with the California litigation privilege, *Thimes* is inapposite. The Ninth Circuit in *Thimes* expressly limited its holding to a unique factual context in which no lawsuit had been filed, and the takedown notices were sent to Amazon in a manner that neither proposed nor threatened litigation. *Thimes*, 2022 U.S. App. LEXIS 10317, at *2 (emphasis added). Here, by contrast, dbest's notices were issued during active litigation and were directly tied to its judicial enforcement of the asserted patents. That distinction is dispositive and places dbest's ***post***-lawsuit conduct squarely within the protections of the Noerr-Pennington doctrine, which extends to litigation-related communications even when directed to third parties.

## IV.  THE COURT MUST DISMISS THE STATE LAW COUNTERCLAIMS UNDER FRCP 12(b)(6)

A motion to dismiss should be granted if, accepting the facts alleged to be true, such facts are insufficient "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A pleading is insufficient "if it tenders 'naked assertion(s)' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

For each of the reasons asserted in section (III)(B)1-(4) above, the state law counterclaims fail.  Specifically, Counts VI and VII are subject to dismissal because as pled: (1) the Counterclaim fails to plead key elements of each of Dongguan's claims for unfair competition and tortious interference; (2) each of Count VI and VII is preempted by federal patent law; (3) the state law claims are subject to the absolute defense of California's litigation privilege; and (4) dbest cannot be liable

for Counts VI and VII by virtue of the application of the *Noerr-Pennington* doctrine.

Hence, the same grounds that justify anti-SLAPP protection support dismissal of the Counterclaim.

## V.  DONGGUAN IS NOT ENTITLED TO LEAVE TO AMEND

Counts VI and VII should be dismissed without leave to amend because amendment would be futile.  "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Reed v. Wells Fargo Bank, N.A.*, Case No. 2:21-cv-07545-JVS-MRW, 2022 U.S. Dist. LEXIS 132763, at *2 (C.D. Cal. Jun. 9, 2022) (quoting *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998)), *aff'd*, Case No. 22-55837, 2023 U.S. App. LEXIS 22032 (9th Cir. Aug. 22, 2023).

Here, Dongguan's state law claims are based solely on dbest's submission of takedown notices to Amazon—conduct that is immunized by multiple independent doctrines, including federal patent law preemption, California's litigation privilege, and Noerr-Pennington immunity. Dongguan has had the opportunity, in the anti-SLAPP context, to demonstrate what evidence might allow it to amend its claims to overcome these bars. It has failed to do so and cannot plausibly allege any facts that would convert dbest's protected petitioning activity into actionable torts. *See, e.g., Oh v. ReconTrust Co.*, Case No. 21-01808, 2022 U.S. Dist. LEXIS 26444, at *5 (C.D. Cal. Feb. 3, 2022) (dismissing claims "with prejudice because amendment would be futile"); *Reed*, 2022 U.S. Dist. LEXIS 132763, at *3 (same).

Accordingly, Counts VI and VII should be dismissed with prejudice.

## VI.  DBEST IS ENTITLED TO ITS ATTORNEY'S FEES AND COSTS

Under California Code of Civil Procedure § 425.16(c)(1), the moving party who prevails on an anti-SLAPP motion is "entitled to recover [] attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1). This fee-shifting provision is **mandatory**. *See Kearny v. Foley & Lardner LLP, et al.*, 553 F. Supp. 2d 1178, 1181

-20-

(S.D. Cal. 2008) ("An award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory"); *see also Vess*, 317 F.3d at 1109; *Martin v. Inland Empire Utilities Agency*, 198 Cal. App. 4th 611, 631 (2011).  As detailed above, Dongguan's state law claims arise entirely from dbest's protected petitioning activity and are barred by multiple independent legal doctrines. Dongguan cannot establish a probability of success, and dbest is therefore entitled to its fees and costs for bringing this motion.

Moreover, Dongguan's outright refusal to attend the scheduled video conference—paired with its dismissive response despite being given a clear date and opportunity to confer—further underscores the appropriateness of a fee award. (Samuel Decl., Ex. B.)

Accordingly, dbest respectfully requests that, should the Court grant this motion, it be permitted to substantiate its attorney's fees and costs by way of separate motion *per* CCP § 425.16.  *See, e.g., TP Link United States Corp.*, 2020 U.S. Dist. LEXIS 104065, at *26 (granting anti-SLAPP motion and awarding fees because moving party "may seek those fees in a properly noticed motion, filed in accord with this Court's procedures").

## VII. CONCLUSION

In sum, dbest respectfully requests that the Court strike and/or dismiss the sixth and seventh counts of the Counterclaim without leave to amend and deem dbest a prevailing defendant entitled to recover its attorney's fees and costs under the CCP § 425.16 from Dongguan.

1    DATED:  July 31, 2025                    ORBIT IP, LLP

2

3                                      By:  /s/ Ehab M. Samuel
                                           EHAB M. SAMUEL
4                                          DAVID A. RANDALL
                                           BRUCE CHAPMAN
5

6                                          *Attorneys for Plaintiff and
                                           Counterdefendant dbest products, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE AND/OR DISMISS COUNTERCLAIMS PURSUANT TO CCP § 425.16 AND FRCP 12(b)(6)**

**<u>Certification of Compliance with Central District of California</u>**

**<u>Local Rule 11-6.2</u>**

The undersigned, counsel of record for Plaintiff and Counterdefendant dbest products, Inc. certifies that this memorandum of points and authorities contains 6935 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  July 31, 2025                    ORBIT IP, LLP

                                   By:  <u>*/s/ Ehab M. Samuel*</u>
                                        EHAB M. SAMUEL
                                        DAVID A. RANDALL
                                        BRUCE CHAPMAN

                                        *Attorneys for Plaintiff and*
                                        *Counterdefendant dbest products, Inc.*